PATTERSON vs. STORM and wife.

In this case, which turned upon the question whether a contract for a loan of money was made on the day when the bond and mortgage bore date, or some three weeks afterwards when they were in fact drawn up and executed, the court held upon the evidence, that the contract was not concluded between the parties on the day the papers bore date, and that they were *antedated* for the purpose of avoiding an intervening statute against usury.

APPEAL from the County Court of *Milwaukee* County.

This was an action brought in June, 1860, to foreclose a mortgage made by the defendants to one Brydges, and by him assigned to the plaintiff. The mortgage and the bond secured by it bore *date* April 1, 1859, and were given to secure the payment of $1,300 in two years after that date, with interest to be paid annually at the rate of twelve per cent. per annum. The mortgage contained a stipulation that in case of the non-payment of interest at any time when it should fall due, the whole amount of the principal should, at the option of the mortgagee or his assigns, be deemed to have become due, and be collectable by foreclosure as if made payable at that time. The interest falling due by the terms of the bond on the 1st of April, 1860, was not paid, and the plaintiff gave notice to the mortgagor of his election to consider the whole amount due. The assignment of the mort-

gage and bond to the plaintiff also bore *date* April 1, 1859. The defense was usury, the answer alleging, among other things, that the agreement for the loan was perfected on the 22d of April, 1859, at Milwaukee; that the bond and mortgage were made and delivered on that day, and *dated* April 1, 1859, for the purpose of evading the usury act which took effect on the 5th day of that month; and that the only consideration of the bond and mortgage was the sum of $988 lent to the mortgagor, *Isaac Storm*, on the day they were executed, the sum of $312 being deducted and reserved out of the sum named in the bond as and for interest on said sum for two years, in addition to the twelve per cent. interest expressly reserved on the face of the bond; and the defendants insisted that the bond and mortgage should therefore be declared void, and that the plaintiff should pay the defendants their costs, &c.

As the only question considered on the appeal in this court was, whether the contract for the loan was really made on the 1st of April, 1859, or on the day the bond and mortgage were executed, it is sufficient to say that the circuit court found that a contract was made between the plaintiff and *Isaac Storm* on the day first named, for the loan of $1300, to bear interest from that date at 12 per cent. per annum; and that the sum of $988, a part only of the amount agreed to be loaned, was paid over and loaned by the plaintiff to said *Storm* on the 22d of the same month, and the mortgage was then executed, in pursuance of said previous agreement; and, as conclusions of law, the court held that such agreement was not in violation of the act against usury which went into operation on the 5th of April, 1859, or any other law of the state, and that the plaintiff was entitled to judgment of foreclosure and sale to make the sum of $988, with interest from the 1st of April, 1859, at 12 per cent. per annum. The defendants excepted to each finding of fact and conclusion of law.

The evidence as to the time when the loan was made was substantially as follows. *Isaac Storm* testified: "I made a loan of the plaintiff on the 20th of April, 1859. On that day I asked the plaintiff if I could have a loan; the plaintiff said I could

June Term, 1861.

Patterson
v.
Storm et al.

have a loan of enough to pay off the incumbrance on my farm, say about $900 or $1000. As I started away from the plaintiff's house, he said, "A new law has been passed prohibiting my taking more than 10 or 12 per cent., and I cannot let you have it unless you will give me 24 per cent. and agree not to make a fuss about it." I agreed to this. He said he could not do the business, but Mr. Rodway would. He introduced me to Rodway, and left. Rodway wanted an abstract of the title of my land. I went for it, and returned next day, and on the 22d the bond and mortgage were drawn and executed. The plaintiff suggested on the 20th that the bond and mortgage should run to a third person, and that he would then purchase them, but didn't want to know where the money came from. Rodway said that Mr. Brydges should be the third person; he did not say what the object was in making the papers run to Brydges; I did not know Brydges. I had talked with the plaintiff three or four times about loaning money; I called at his house three or four times; it was mere street talk; no agreement was made. Every time that I talked with the plaintiff he said he had no money to loan but would have some soon, until about the 10th of April, when he said he had the money for me, and I came in for it as soon after as I could." Wm. H. Rodway testified: "The bond and mortgage were executed and delivered to me as the plaintiff's agent on the 22d of April, 1859. I saw plaintiff and defendant in the street about six weeks before that time. Plaintiff introduced me to defendant early in March. I saw the abstract of defendant's title before the 21st of April, 1859. I am positive that he and I made the agreement about eight or ten days before. I had no conversation with him about the abstract on the 20th.— I made the agreement to loan the defendant $1,300, at my office, about 11 o'clock, on the 1st day of April, 1859. He had been to see me several times. The agreement was not made till that day. I told him he could have the money, because I knew it was ready for him. I drew the money from the bank on the 22d of April, I think, and paid it to him. He came in on that day and wanted to know if he could have the money. I told him he could. The terms

and conditions were made in March. I told him then he could have the money when he perfected his title. He then said, 'You wont let any one else have the money, will you?' I said, 'No; the money is held for you; reccollect you are paying interest on the money as it is now in the Juneau Bank.' This was on the 1st of April, 1859. We did not then know how much it would take to pay off the incumbrances on his farm. I dont know that anything further was said except that he was to complete his abstract of title. I don't know that the rate of interest was ever mentioned. I did not receive the money from Mr. Patterson; he drew a check in blank for me and left it at his house with his wife, and I knew I could get it at any time. I did not see the plaintiff and *Mr. Storm* together during the month of April, 1859. The terms of the bond and mortgage are the same as talked of by myself and *Mr. Storm* previously, and were closed April 1, 1859; and that was the reason they were dated that day. I did not know of the law passed April 5, 1859." The plaintiff testified: "I did not see *Storm* in April; I saw him in March; don't know that I had any conversation with Rodway about making mortgage to a third person; I furnished my money to Rodway to loan as he had a mind to. I signed the check I gave him on the Juneau Bank, about the last of March. I can't say whether I had $1,300 on deposit in that bank from the 1st to the 22d of April, 1859; but if not, I had it where I could command it any time. Rodway and *Storm* concluded their negotiation on the 1st of April, 1859, and that is the reason the papers were dated on that day."

*J. La Due*, for appellant:

The day of the loan, the time when the liability of the debtor is actually incurred, is the time when the corrupt agreement is made. Blydenburgh on Usury, 131–2; *Harris vs. Hudson*, 4 Esp. N. P. Cases, 152; *Carlisle vs. Trears*, Cowp., 671. It is necessary that the debt be absolutely incurred and not merely resting on an executory agreement, the execution of which depends on circumstances that may never happen. 4 Brown's Ch. R., 28; 4 Day, 318; 19 Johns.,

June Term,  294; 6 Wend., 415; 8 Cow., 706; 5 Wend., 595; 8 Mass.,
   1861.
          135; 14 Maine, 240; 1 Greenleaf, 167.

PATTERSON          *James Mitchell,* for respondent:
   v.
STORM et al.          The contract was complete when the plaintiff agreed to
loan the money on the terms agreed, and the defendant
agreed to take it and secure it by his bond and mortgage.
The bond and mortgage are only *evidence* of the contract,
which was complete without them.   Chitty on Con., 10th
Am. Ed., 4; 3 Scott, 238, 250; 5 Taunt., 788; 6 East, 307;
1 Parsons on Con., 399; 10 E. L. & Eq., 182.   See also
*Banks vs. Van Antwerp,* 5 Abb. Pr. R., 411.

December 3(.          *By the Court,* DIXON, C. J.  We are satisfied that the anteda-
ting of the bond and mortgage was merely colorable, and that
it was done for the purpose of avoiding the effect of the act
against usury which went into operation on the 5th of April.
This conclusion seems so obvious from the whole evidence,
that we deem a particular examination of it unnecessary.
The circuit judge found that the agreement for the loan was
made on the 1st day of April, the day to which the bond
and mortgage were dated back.   In this we think he is not
sustained by the testimony.   Nothing was consummated—
no binding or valid agreement made, upon which either par-
ty could have had a remedy against the other, until the 22d
of April, when the bond and mortgage were executed and
the money paid over.   Giving the utmost weight to the tes-
timony of the plaintiff's agent, Rodway, there was no such
agreement—nothing more than an application on the part of
the defendant to borrow, and a general offer by the plaintiff
to lend.   He testifies expressly that he does not know that
the rate of interest was ever mentioned.   This was a very
important part of the agreement, and, from the general fea-
tures of the case and the manner in which the business was
closed, we cannot believe that it would have been overlooked
if the parties had come to a final and definite understanding
upon the subject.   The agreement for interest, therefore,
was, upon the plaintiff's own showing, made on the 22d of
April, at which time also, in our judgment upon the facts,
the loan itself was made.

June Term,
1861.

The judgment must therefore be reversed, and the cause remanded for judgment to be entered for the defendants according to the prayer of their answer.