## ANDREWS and others vs. HART and another.

17  297
80  143

The Racine, Janesville & Mississippi R. R. Co. was authorized, under its charter (ch. 392, Laws of 1852), to take a note and mortgage upon a subscription to its capital stock. *Cornell vs. Hichens*, 11 Wis., 353, followed.

Notice to a purchaser of such note and mortgage, before maturity, that they were given for such stock, was notice of a lawful consideration, and did not impair his rights as a *bona fide* holder.

Where the interest on said note was payable annually, and both principal and interest payable at Racine in this state, the note (which was payable to bearer), and the mortgage, were transferred with a bond of the company attached, by which it guarantied to the holder payment of the interest semi-annually at New York city, and payment of the principal at the same place. The bond also provided that the note and mortgage might be "transferred in connection therewith, but not otherwise, to any party or purchaser whomsoever." *Held* that this guaranty did not affect the negotiable character of the note and mortgage.

In an action upon such note and mortgage, it was stipulated that the plaintiffs became purchasers before maturity, at par, without any knowledge or information that the company had agreed with the maker of the note to pay the inter-

est, or any information of the circumstances under which the instruments were obtained, except that they were given for the capital stock of the company. *Held*, that the court should have excluded all evidence offered to show that the execution of the note and mortgage was procured by fraudulent representation[s] on the part of the company.

A note which draws interest payable annually from a day anterior to its date, is not usurious upon its face, although the first installment of interest will be a greater amount than the principal sum would produce at the highest rate of interest allowed by law, during the period between the date of the note and the time when such installment falls due. The *presumption* in such a case is, that the note was given upon a state of facts which authorized the taking of such an instrument.

APPEAL from the Circuit Court for *Rock* County.

Action to foreclose a mortgage executed by the defendants *Samuel Hart* and *Sarah*, his wife, to the Racine, Janesville & Mississippi Railroad Company, to secure a note for $2,000, given by said *Samuel*, and payable to said company or bearer. The complaint alleges that the railroad company, for a good and valuable consideration, "duly sold, transferred, assigned and delivered said note and mortgage" to the plaintiffs, before maturity. The complaint is otherwise in the usual form. The answer set up as a defense the facts which were found by the circuit court, as hereinafter stated. It also alleged that the agreement for the payment of interest was usurious; and insisted that the railroad company had no power to make the contract which it did make with the defendant *Samuel Hart*, and that said company could not be the payee or indorser of a negotiable promissory note, or the drawee or acceptor of a bill of exchange.

On the trial, a stipulation between the parties was read in evidence, as follows: "It is hereby stipulated that on the trial of this action it shall be taken as admitted, that the note and mortgage on which the action is founded were taken in payment for twenty shares of $100 each, of the capital stock of the Racine, Janesville and Mississippi Railroad company, issued and delivered to the defendant *Samuel Hart*, by said company, and were known to have been so take at the time they were

purchased by the plaintiffs; that the plaintiffs became the purchasers and owners of said note and mortgage before maturity, at par, and without any knowledge or information that the said railroad company had given back to the said defendant *Samuel Hart* any agreement binding the company to pay the interest thereon, or for any other purpose whatever; and without any knowledge or information in fact of the circumstances and transaction under which said note and mortgage were obtained, except as aforesaid; and that at the time of such purchase and sale there was attached to said note and mortgage, and sold and transferred therewith, a bond or instrument in writing under seal, of which the following is a copy, viz: 'United States of America, State of Wisconsin. Racine & Mississippi Railroad Co. Bond. Know all men by these presents: That the Racine & Mississippi Railroad Company, for a valuable consideration hereby acknowledged, have guarantied, and hereby do guaranty to the holder hereof, the payment of the principal of the annexed promissory note and mortgage securing said note, executed by *Samuel Hart* to said railroad company or bearer, dated on the 12th day of April, 1855, payable in in five years from the 10th day of February, 1855, with interest at the rate of ten per cent. per annum, payable annually. And said company further hereby guaranty to said holder the payment of the interest on said note and mortgage semi-annually, and that both the principal and interest thereof shall be paid at their office in the city of New York, and that said note and mortgage may be transferred in connection with this bond (but not otherwise) to any party or purchaser whomsoever.' " [Here followed the attesting clause, signature of president and secretary, and corporate seal.] The plaintiffs then proved the amount due on the note and mortgage, by computation, and rested. The defendants introduced a large amount of evidence to sustain the allegations of the answer. The plaintiffs objected to all evidence offered to show that the defendant *Samuel Hart* was induced to execute the note and

mortgage by false and fraudulent representations of the company and its agents; but the objection was overruled.

The court found, in substance, the following facts, in addition to those stated in the above stipulation: On the 12th of April, 1855, said *Samuel Hart* executed the note in suit, payable to said Racine, Janesville & Mississippi R. R. Co. or bearer, at its office in the city of Racine in this state, with interest at ten per cent. per annum, payable annually at the same place; and at the same time, to secure said note, executed to the company, with his wife, the mortgage mentioned in the complaint. Said note and mortgage were given in payment for twenty shares of the capital stock of said company, of $100 each, under an agreement between said *Samuel Hart* and the company that he should take twenty shares of its stock and pay for them in his note and mortgage, and that the company should not demand from him any interest on the note, but should save him harmless from the interest and from all loss on his stock subscription, and should deliver to him a written agreement to that effect, simultaneously with the delivery to it of the note and mortgage; which it accordingly did. To induce said defendant to execute the note and mortgage, the officers and agents of the company made certain false and fraudulent representations as to the condition of the company, (which are stated at length in the finding); and the note and mortgage were executed by him in the belief that those representations were true. Said defendant has never paid any interest on the note, nor any part of the principal; but the interest was paid by the company as provided in the bond affixed to the note and mortgage, up to the 10th of August, 1857.—As conclusions of law, the court held that the note and mortgage, and the agreement of the company to save said *Samuel Hart* harmless, &c., should all be taken together as one agreement; that said note and mortgage are illegal, fraudulent and void; that " the plaintiffs were not *bona fide* holders thereof for value before due, without notice of defects, so as to shut out an inquiry in-

to the real transactions between the company and the maker of the note;" that said *Samuel* ought to be adjudged not to be the owner of any stock in said company, in payment for which said note and mortgage were given; and that the defendants should have judgment for their costs.

Judgment accordingly; from which the plaintiffs appealed.

*Conger & Hawes*, for appellants:

1. Whatever may be the equities between the defendants and the railroad company, the appellant holds exempt from them if he is a *bona fide* holder for value, before maturity, and without notice. *Fisher v. Otis*, 3 Chand., 83; *Martineau v. Mc-Collum*, 5 id., 163; *Croft v. Bunster*, 9 Wis., 503; *Cornell v. Hichens*, 11 id., 353. That the appellant is such a holder follows from the facts admitted by the stipulation. His rights as such are not affected by the fact that he had notice that the consideration of the note was capital stock of the railroad company; for it has been settled by this court that that was a legal consideration. *Clark vs. Harrington*, 11 Wis., 306; *Blunt v. Walker*, id., 334; *Cornell v. Hichens, supra*; Charter of Racine, Janesville & Mississippi R. R. Co., Laws of 1852, ch. 392; Pr. Laws of 1853, chaps. 96, 367; Pr. Laws of 1854, ch. 16; Pr. Laws of 1856, ch. 66. The fact that the note and mortgage were transferred under, by virtue of and in connection with the bond of the company, did not, in consequence of the form of that bond, give the appellants a character other than that of *bona fide* purchasers. The bond is, in effect, nothing more than a common guaranty of payment indorsed on a note. It was competent for the payee, in order to give greater currency to the paper, to contract with the transferee that interest should be paid differently, and that both principal and interest should be paid at a different time and place from those specified in the note. While such a contract could not affect the maker, it is not apparent how it can make the transferee other than a *bona fide* purchaser. 2. The fact that the note was drawn payable with interest annually from a day anterior to its

date, does not afford any evidence of usury, even if a computation should show that the first annual payment, at 10 per cent. from that date, would amount to more than twelve per cent. calculated for the period between the day when the note was actually made and the day of such payment. It is only of notes, thus drawn, which are shown to have been given for money lent at their date, that usury can be predicated. If given for anything else, they are legal; and when they are so drawn, the presumption will be that they were given for some other consideration than money loaned. *Marvin v. Feeter*, 8 Wend., 533; *Holden v. Pollard*, 4 Pick., 173; *Leavitt v. Pell*, 27 Barb., 322–332; Edwards on Bills and Prom. Notes, 360, 363; 1 Cowen's Treat. (2d Ed.), 254. To constitute usury there must be, first, a *loan*, or an agreement for the *forbearance* of a pre-existing debt; and second, an agreement to pay illegal interest. 4 Peters, 305; *Pomeroy v. Ainsworth*, 22 Barb., 118; *The State Bank v. Coquillard*, 6 Ind., 232; *The Dry Dock Bank v. The Am. L. I. & T. Co.*, 3 Coms., 344; *Cutler v. Wright*, 22 N. Y., 482. This note, being for stock, would be upheld as valid although payable with interest exceeding the legal rate. In such case the presumption would be that the interest reserved formed part of the price agreed to be paid. *Beete v. Bidgood*, 7 Barn. & Cress., 453 (14 E. C. L., 80); *Cutler v. Wright, supra.*

*J. H. Knowlton*, for respondents, insisted upon the following among other points: 1. The company had no power, under its charter, to take payment for its stock in notes and mortgages. The charter provides that the board of directors shall have power to determine the time, manner and proportions in which the stockholders shall pay the *money* due on their respective shares. The legislature, therefore, contemplated that all the subscriptions should be paid in *money*. 2. The transaction between the company and the farm mortgagors was invalid, because the latter procured their stock on more favorable terms than were allowed to other subscribers, not being requir-

ed to make payment of any part of the sums subscribed by them for five years after the time of such subscription. The corporation could not make this distinction between different classes of stock subscribers. Redfield on Railways, 99; 17 Ohio, 187; 14 id., 563; 7 Ind., 595; 20 Conn., 178. 3. The plaintiffs took the note and mortgage with knowledge that the consideration for which they were executed was stock of the company. This knowledge subjects the note in their hands to the defense that the company had no power to take it in payment for stock; and also to the defense that it was obtained by false and fraudulent representations on the part of the company. 4. The bond accompanying the note and mortgage in the hands of the plaintiffs, is not an agreement by the company to answer for the debt or default of another. The company agrees itself to pay the interest of the note semi-annually at New York, not annually at Racine as the maker was to do; and to pay the principal also in New York. It is an original, independent and absolute agreement. The plaintiffs, having accepted it, are bound by its terms and legal effect. There are but two constructions that can be claimed for this instrument. First, that the note and mortgage were sold to the plaintiffs and assigns, but upon the condition that so fast as the company paid the interest or principal, it should to that extent become again the owner thereof. This would not be an absolute sale of the note and mortgage. The company impose a perpetual restraint upon any transfer of the paper by the plaintiffs unless this agreement goes in connection therewith. Can such a restraint be imposed and assented to, as to a promissory note payable to a named person or bearer, and it be held a transfer in " the regular course of trade" among the dealers in commercial or negotiable paper? The regular course of trade would be by simply delivering the note, unconnected with any other obligation of the party transferring. You cannot clog negotiable paper with such obligations and still claim that it is transferred in the

"course of trade," and no person who takes it with such clog has any pretense of right to claim that he is a *bona fide* holder of negotiable paper freed from defenses by the maker. Again, the party who takes paper in this way agrees that the original payee shall *retain* the right to collect and receive all the money paid on the note by the maker either as interest or principal. A payee retaining this right never has parted with his right to enforce payment of the note by suit in his own name. And the person who allows the payee to retain this right never gets the right to maintain an action in his own name for the enforcement of payment of such negotiable paper. Now it is an essential ingredient in the transfer of negotiable paper, in order to shut the maker out from defenses, that it is so done as to vest in the transferee the right to maintain a suit at law thereon in his own name. This has never been done with the note now in controversy. To *retain* the right to maintain an action to enforce payment of this note according to its terms, was important to the company, inasmuch as it agreed to anticipate by six months one-half of every year's interest, and to pay in New York; while it would have to wait until the end of each year for interest, and to take that in Racine, as the maker in his note had agreed. Now the company paid this interest *semi-annually* in New York until the 10th of August, 1857. To this extent the right of action for that interest against the maker of the note, is in the company, beyond all doubt. The plaintiffs having been paid this interest, can certainly have no cause of action therefor. It can therefore only be in the company. When a cause of action as to a part of the money mentioned in the note is in the company, no action can be maintained by the plaintiff alone, even if it be admitted that he too has a cause of action with the company for a part of the money named in the note. In such case, as the cause of action cannot be split up, and part recovered by one and part by another, both must join as plaintiffs. When both join, it is obvious that the present plaintiff would stand before the

court as a tenant in common (if owner at all) with the company. His interest would be *undivided.* As against the company, there can be no doubt the maker of the note would be allowed to make any defense which he might have. Of consequence there has never (on this theory) been such a transfer of the note in question, as bars the defenses which the maker has against it.—The other, and more correct construction of this bond is, that the plaintiffs got no more than a mere equity in the note and mortgage, if they even got that; and that the company retained the legal title to all the money mentioned in the note. If the company retained the legal title to all, or even to any portion of that money, then the note may be defeated, in a suit brought by the plaintiffs, by any defense that would be available were the suit brought by the company; because in such a state of case, under the old practice, there was not such a transfer of the note as would have enabled the plaintiffs to maintain an action, except for their use in the name of the company. 5. There was no indebtedness until the execution of the note. There is no pretense of liability until the note was executed by the defendant. The agreement contained in the note is to pay interest annually on the 10th of each succeeding February. This is a distinct agreement to pay interest for each year separately, and the promise is to pay interest from the preceding 10th day of February. This made the interest for less than ten months, from the time of liability accruing to the 10th of February, 1856, a greater rate than 12 per cent. per annum. However small this excess may be, the statute operates upon it, and declares the contract void.

*By the Court,* DIXON, C. J. The power of the Racine, Janesville & Mississippi Rail Road Company to take the note and mortgage upon a subscription for capital stock cannot be questioned. Charter, chap. 392, secs. 2 and 6, Laws of 1852; *Clark vs. Farrington,* 11 Wis., 306; *Blunt vs. Walker,* id., 334;

*Cornell vs. Hichens*, id., 353. Therefore, notice to the plaintiffs, at the time they received the note and mortgage, that they were given by the defendants in consideration of a subscription to the capital stock of the company, does not impair the legal rights of the plaintiffs, or change their attitude as *bona fide* holders. It was notice of a lawful consideration, and not of one which tended at all to defeat the obligation as between the original parties.

All other questions as to the relations of the plaintiffs and their rights as *bona fide* holders, are cut short by the stipulation. It is there agreed that the plaintiffs became the purchasers, before maturity, at par, without any knowledge or information that the company had agreed with the defendant *Samuel Hart* to pay the interest, or any information in fact of the circumstances and transaction under which the note and mortgage were obtained, save that they were given in payment for the capital stock of the company. This is an end of all controversy in that respect, and the court should have excluded the evidence offered for the purpose of showing that the note and mortgage were executed and delivered in consequence of the false and fraudulent representations of the company and its agents, unless there is something in the mode of transfer to the plaintiffs which should deprive them of the protection ordinarily afforded by law in this state to the holders of such paper under like circumstances. We feel quite confident that there is nothing which should take this case out of the general rule. *Fisher v. Otis*, 3 Chand., 83 ; *Martineau v. McCollum*, 4 id., 153 ; *Croft v. Bunster*, 9 Wis., 503 ; *Cornell v. Hichens, supra.* The note is payable to the company *or bearer*, and was, therefore, transferable by delivery. The only circumstance from which an inference can be drawn unfavorable to the claim of the plaintiffs, is, that the transfer was accompanied by a written guaranty of the company, annexed to the note and mortgage, by which the company engaged to the holder thereof that the principal, and the interest semi-annually, should be

paid at their office in New York. It was likewise provided in the guaranty that the note and mortgage might be transferred in connection therewith, but not otherwise, to any party or purchaser whomsoever.

After the case of *Crosby v. Roub*, 16 Wis., 616, it cannot be contended that this guaranty destroyed, or in the slightest degree affected, the negotiable character of the note and mortgage. There the note was payable *to order*, and was transferred by the company as collateral security for the payment of its negotiable bond to which it was annexed. There was no formal indorsement of the note. The transfer was effected by words of assignment contained in the bond. Here no indorsement was necessary; and the guaranty, made negotiable by express words, is no more than a further security which every purchaser of negotiable paper may well take without jeopardizing his claim against the maker or other party to the paper.

The only other question made by the pleadings, though apparently not urged in the court below, is that the note is void for usury. It was executed on the 12th of April, 1855, but draws interest from the 10th of February preceding, five years from which time the principal sum became due. No proof was offered to show that this was an artifice resorted to for the purpose of exacting illegal interest, but it is said that the note is usurious on its face. The contrary doctrine is well settled. The presumption is that it was given upon a state of facts which authorized the taking of such an instrument, and that the transaction is lawful. *Marvin v. Feeter*, 8 Wend., 533; *Holden v. Pollard*, 4 Pick., 173; *Leavitt v. Pell*, 27 Barb., 332.

Judgment reversed, and cause remanded with direction that judgment be entered for the plaintiffs according to the demand of the complaint.