HOWLAND and another vs. MARR and another.

*Usury—Note ante-dated—Previous oral agreement—Interest upon interest.*

By ch. 160, Laws of 1859, parties were allowed to contract for twelve per cent. interest on the loan and forbearance of money, but such rate was required to be clearly expressed in writing.  By ch. 202, Laws of 1860, such contracts thereafter made for more than ten per cent. interest, were avoided.  After this act

was in force, a creditor took from his debtor a note for interest which had fallen due on former notes at various times. before the passage of the act, ante-dated it to the average of the times when the several sums included therein had become due, and made it draw interest at *twelve* per cent. It appearing from the evidence that said note was executed in pursuance of an understanding and agreement between the parties had in 1859 : *Held*, that it was not usurious.

APPEAL from the Circuit Court for *Kenosha* County.

Action to avoid a note and chattel mortgage, and to restrain the seizure and sale of the mortgaged property. The defendant *Marr* was the mortgagee, and the sheriff of the county was also made defendant.

In April, 1860, in an accounting between the plaintiff *Meredith Howland* and said *Marr*, it was found that upon various notes running from the former to the latter, interest had fallen due in various sums amounting to $331.00, and at various times, ranging from October 15, 1859, to February 2d, 1860 ; and that the average of said times, as computed by said *Howland*, was December 5th, 1859. *Howland* thereupon executed a note as of the last mentioned date, for said sum of $331.00, payable with interest at *twelve* per cent.; although ch. 202, General Laws of 1860, (which took effect on the 31st of March of that year,) limited the rate of interest which should be reserved on special contract to *ten* per cent. The note was also executed by the plaintiff *Thomas Howland*; and a chattel mortgage was executed in part as security therefor. Interest was paid on the note at the rate of twelve per cent. for several years ; but in February, 1865, this action was brought to avoid the same, &c., on the ground of usury.

The general effect of the testimony as to the previous course of dealing betweeen the parties, and as to an alleged special agreement between them in the fall of 1859, will appear from the opinion.

The circuit court found for the plaintiffs, and rendered judgment in accordance with the prayer of the complaint; and the defendants appealed.

*J. J. Pettit*, for appellants.

*O. S. & F. H. Head,* for respondents, cited 9 Wis., 361 ; 2 Cow., 678 ; 3 Green, 255 ; 2 Scam., 333 ; 1 Gilm., 690.

COLE, J.  The evidence in this case abundantly shows that it was the custom between these parties to convert interest already due into principal, and to give notes drawing twelve per cent. interest for the amount of such interest.  This was the course of dealing between the parties, and in some cases it appears the notes thus given were ante-dated to the time the interest became payable.  Whether this was in pursuance of a general understanding and agreement between the parties, that interest, if not paid when due, should become principal and draw interest, it is perhaps unnecessary to determine.  *Marr* says that there was such an understanding or agreement made as early as 1856.  But *Meredith Howland* denies that there was a general agreement between him and *Marr* that if any interest became due and unpaid it should draw interest at 12 per cent., and that he was to give his note for it accordingly ; yet he does say it was so arranged from time to time, because he could not pay the interest, and *Marr* insisted that the interest should draw interest at 12 per cent.  So that there is no room to doubt as to the custom of the parties.  It was to convert the interest due into principal, the debtor giving a note for the amount, which drew the same rate of interest as the sum loaned.  The circumstances of the giving of the $331 note are stated by *Marr* to be as follows.  He says: "In the fall of 1859, I was about going south to spend the winter, and I called on *Meredith Howland* for $1000, or so much of the money [as] he was owing me, and he could not pay me any money.  I then wished to look over and see how we stood, and take a note for interest then due me ; *Howland* said it would make no difference ; that he could not then well attend to it., that he was going that winter to the legislature at Madison, and wanted to use all the money he had ; and that he would arrange it up in the spring, the same as though it was done then." *Marr* further states that,

in the spring of 1860, he and *Howland* looked over their matters, and ascertained the amount due for interest on several notes which he held against *Howland*; that the time for the payment of the interest was equalized; that the note in question was given for the balance of the interest; that *December 5th, 1859,* was the time, as arranged by *Howland,* that interest was to be cast to, and therefore the note was dated as of that day. *Howland,* although he was subsequently called, does not deny that this agreement was made in the fall of 1859 in respect to the settlement of the interest then due ; and therefore we may fairly assume that the note was given in May, 1860, in pursuance of the previous understanding and agreement between the parties. And the question arises, whether, in consequence of the note being ante-dated so as to carry out this agreement between the parties, it became affected with usury. At the time the note was actually given, the law limited the rate of interest to 10 per cent. (Laws of 1859, chap. 160 ; Laws of 1860, chap. 202); although in December, 1859, it was competent for parties to contract for the payment of 12 per cent. interest, in which case such rate, exceeding seven dollars on the one hundred dollars, was required to be clearly expressed in writing. Sec. 1, chap. 160, *supra.* There certainly is not the least ground for saying that the parties resorted to this expedient of ante-dating the note as a cover for usury, or to evade any law upon that subject. There is not a particle of proof to show any corrupt motive in thus dating the note, or an intention of taking more interest than the law allowed for the use of money. But the note was ante-dated simply for the purpose of carrying out the agreement and understanding of the parties, entered into the fall before, that the lender should receive interest upon interest after it became due and payable, at the rate of 12 per cent. Had the note been actually given in December, it would have been valid beyond all question. And does the circumstance that the note was not executed until some months after render the contract void ? It appears to

us not. The contract was in fact made in the fall, and it was subsequently reduced to writing so that the lender might have the necessary legal evidence of its terms and conditions. The interest was actually due in the fall, and should have then been paid, or a note given for the amount. But as the borrower could not then attend to the matter, and wanted to use his money, he agreed to arrange it in the spring so that the transaction should have the same legal effect as though then consummated. Hence the note was ante-dated in conformity to this understanding and agreement. We do not think the facts show that the instrument is usurious. See *Patterson v. Storm*, 14 Wis., 648 ; *Banks v. Van Antwerp*, 5 Abbott, 411 ; *Andrews v. Hart*, 17 Wis., 307.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to dismiss the complaint.