# CASES DETERMINED

# August Term, 1891.

---

W. W. KIMBALL COMPANY, Respondent, vs. MELLON, Appellant.

*May 6 — September 29, 1891.*

| 80 | 133 |
|----|-----|
| 80 | 236 |
| 80 | 133 |
| 81 | 630 |
| 80 | 133 |
| 101 | 196 |
| 80 | 133 |
| 103 | 344 |
| 80 | 133 |
| 113 | 3 83 |
| 80 | 133 |
| 115 | 2 292 |

*(1, 2) Promissory notes: Negotiability: Certainty as to ₁amount and time of payment. (3) Security passes on transfer of note. (4-6) Conditional sales: Chattel mortgages: Filing: Constructive notice.*

1. An agreement subjoined to a note, stating that it is given for a piano the title to which is to remain in the payee until payment, does not render the note non-negotiable.

2. But a note payable in instalments is rendered non-negotiable by a subjoined agreement that in case of default in any payment, or an attempt to dispose of or remove the chattel for the price of which the note is given, the holder may declare the whole amount due, and may collect the same with ten per cent. damages for expenses of collection, or may take possession of and sell the property to pay the unpaid balance, interest, damages, and costs of sale, and that, if there is a deficiency on such sale, the signer will pay it on demand. Such agreement renders both the amount and time of payment uncertain.

3. The transfer of a negotiable note containing an agreement that the chattel for the price of which it is given shall remain the property of the payee until the note is paid, transfers the security as an incident to the note, and nothing is a defense to the security which would not be a defense to the note.

4. Under sec. 2317, R. S., a contract for the sale of personal property by the terms of which the title is to remain in the vendor and the possession in the vendee until the purchase price is paid, if signed only by the vendee, is void as to third persons without notice; and the filing thereof is not constructive notice.

W. W. Kimball Co. vs. Mellon.

5. Such a contract is a conditional sale, although it provides for the unconditional payment of the debt. It is not a chattel mortgage, and cannot be filed as such so as to be constructive notice.

6. The agent of a company dealing in pianos sold an instrument under a written contract by which the title was to remain in himself until payment of the price. This contract, which was not negotiable, he assigned to his principal, the owner of the piano. He also took from the purchaser negotiable notes containing the same condition as to the title of the piano, and these he transferred to one who knew nothing of his having taken the contract also. *Held*, that the *bona fide* holder of the notes was entitled to enforce their payment out of the piano, in preference to the piano company, the assignee of the non-negotiable contract.

APPEAL from the Circuit Court for *Milwaukee* County.

Replevin for a piano. The facts are fully stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant the cause was submitted on briefs by *Winfield Smith*.

For the respondent there was a brief by *Bloodgood, Bloodgood & Kemper*, and oral argument by *J. B. Kemper*. They contended, *inter alia*, that there are two chattel mortgages, not contracts of conditional sale, with negotiable notes, and that the respondent's is paramount because first transferred and the only one filed. R. S. sec. 2317; *Porter v. Parmly*, 43 How. Pr. 445; *Hervey v. R. I. L. Works*, 93 U. S. 664; *Heryford v. Davis*, 102 id. 235; *Cadle v. McLean*, 48 Wis. 630; *Williams v. Porter*, 41 id. 422; *Lillie v. Dunbar*, 62 id. 198, 204; *Rawson Mfg. Co. v. Richards*, 69 id. 643; *Thomas v. Richards*, id. 671; *Olson v. Paul*, 56 id. 31; *Rice v. Kahn*, 70 id. 323; *Hill v. Merriman*, 72 id. 483; *Murch v. Wright*, 46 Ill. 487; *Lucas v. Campbell*, 88 id. 447; *Greer v. Church*, 13 Bush, 430; Jones, Chat. Mortg. sec. 30; Benj. Sales (4th Am. ed.), sec. 422; Id. note to p. 11; *Harkness v. Russell*, 118 U. S. 663. The respondent's note is not uncertain as to amount and time of payment, because the damages from default in payment are

*fixed* at ten per cent., and are not enforceable except by suit *after* maturity, and because the contingency varying the time of payment fixed in the note by measure of time, is wholly within the control of the maker and not beyond that of the holder. *Morgan v. Edwards*, 53 Wis. 599; *First Nat. Bank v. Larson*, 60 id. 206; 1 Daniels, Neg. Inst. sec. 45; *Mattison v. Marks*, 31 Mich. 421; *Helmer v. Krolick*, 36 id. 373; *Continental Nat. Bank v. McGeoch*, 73 Wis. 332; *McClellan v. Norfolk Southern R. Co.* 110 N. Y. 469.

The following opinion was filed June 3, 1891:

ORTON, J. The respondent is a corporation in the business of manufacturing and selling pianos, in the city of Chicago, and one H. N. Hempsted was in the business of selling pianos and other musical instruments in the city of Milwaukee, and in April, 1885, they entered into an agreement of the following terms:

In consideration of having the exclusive agency to sell pianos for the corporation, Hempsted agrees to sell all instruments ordered, within thirty days from shipment, and promptly remit to the company cash or approved customers' contracts with security on the instrument sold. The contracts to be in blanks furnished by the company, to draw interest, and the average time not to exceed four months, and payment guarantied by Hempsted. On failure to sell within thirty days, he is to pay eight per cent. interest on the invoice price, but the instruments not to be considered sold to Hempsted. He is to pay the price of the instrument to the company, if his customers' contracts fall due and remain unpaid. All goods in Hempsted's hands to be insured for the benefit of the company. He is to be credited ninety per cent. on goods returned. He is to send statement of the instruments sold and unsold, and make prompt return on sales. Either party may terminate the agency, and stock in Hempsted's hands shall then be

W. W. Kimball Co. vs. Mellon.

subject to the company's order.   The form of the contract of sale shall be furnished by the company.

Under this contract Hempsted did business, securing pianos from the company and selling them in his own name and as his own property, until he failed in business, May 3, 1889.   He sold mostly on credit, receiving in such cases from the purchaser a contract in the form given by the company.   These contracts were signed by the purchaser, and assigned to the company.   About the 4th day of July, 1888, Hempsted sold one of the pianos so furnished by the company to one L. A. Miner, and received from him the following contract made in the prescribed form:

"$290.                    MILWAUKEE, July 4th, 1888.

"For value received, I, the subscriber, of Milwaukee in the county of Milwaukee and state of Wisconsin, promise to pay to the order of H. N. Hempsted, two hundred and ninety dollars, at his office in Milwaukee, Wis., as follows: Fifteen dollars cash this day, and then fifteen dollars on the 4th day of each succeeding month until full amount is paid, with interest on each payment at the rate of seven per cent. per annum from the date hereof until paid.

"The consideration of the above promissory note is the agreement to sell and deliver to the signer one piano made by Emerson & Co., Boston, number 45,755, style 8, by H. N. Hempsted, upon the following express condition, namely: That the signer hereof agrees that, in case he makes default in the payment of any instalment of said note at the time and place when the same becomes due, or attempts to dispose of or removes said instrument from the county of Milwaukee, the said H. N. Hempsted, or his assigns, shall be at liberty to declare the whole sum unpaid, due and payable, and the said instrument the property of the signer, and to sue for and collect the same, with ten per cent. damages for expenses of collection, which the signer agrees to pay; or, at said Hempsted's option, to take possession

of said instrument, and to sell the same at private sale, to pay the unpaid balance of said note, interest, damages, expenses, and costs of sale, and return the remainder to the signer hereof; and it is expressly agreed by the signer hereof that all the right and title to the above-named instrument is in H. N. Hempsted or his assigns, and that it is his or their privilege, at his or their option, to sue said note and collect the same, or to enter the premises of the signer and to recover the possession of the above-named instrument, with the full right to vest the title in another purchaser. And the signer further agrees that, if the above-named instrument does not sell for sufficient to pay the above note, together with interest, damages, and costs of sale, that the signer hereby agrees to pay the deficiency on demand." [Signed] 　　　　　　　　L. A. MINER.

"Witness: L. L. TYLER."

At the same time, and as part of the same transaction, and to secure the unpaid purchase price of said piano, the said Miner executed to Hempsted five negotiable promissory notes, payable, respectively, in four, eight, twelve, sixteen, and twenty months; the first four being for $60 each, and the fifth for $35, each note in form as follows, with the following agreement appended thereto:

"$———.　　　　　　　　MILWAUKEE, July 4, 188—.

"——— months after date I promise to pay to the order of H. N. Hempsted ——— dollars, with interest at seven per cent. per annum, value received, payable at Wis. Marine & Fire Ins. Co. Bank.

"This note is given for piano No. 45,755, style 8, manufactured by Emerson Co.,— the express condition being that the title and ownership of said piano is to remain in the name and subject to the order of said H. N. Hempsted until this note is fully paid. [Signed] L. A. MINER."

The last three notes maturing were, in September, 1888, and before any one of them had matured, sold, indorsed, and

delivered for full value by said Hempsted to one Albert W.
Snyder, acting by W. Smith, Esq., his agent, who then had
money of Snyder's to invest. ·Neither Smith nor Snyder
had any notice (unless constructive) until May 4, 1889, that
the said piano, at the time of the sale, was not the absolute
property of Hempsted, or that any contract or other paper
had been executed by Miner to Hempsted, other than the
said notes; nor of any claim of the plaintiff upon the piano,
either at the time of the sale by Hempsted or at any other
time.    At the time of the sale, Miner supposed that he had
to pay only on the said contract, and that the notes were
mere accommodation paper, and that Hempsted would take
care of them, and deliver· them up when their several
amounts were paid on said contract.    Until May 3, 1889,
the plaintiff did not know of ·the existence of said notes,
and supposed that the said contract was the only one con-
nected with said sale.    The said contract was duly assigned
to the plaintiff by Hempsted, July 31, 1888.    A copy of
said contract of sale was filed by Hempsted in the office of
the clerk of the city of Milwaukee on July 7, 1888, and the
assignment or transfer thereof was filed in said office,
May 11, 1889.    Hempsted negotiated one of said notes at
the bank, and paid it to the bank according to such under-
standing with Miner that he should, himself, take care of
the notes.

Mr. Smith, Snyder's agent, supposed, at the time of the
purchase of said notes, that the notes so given were the
only papers executed by Miner on the sale, and that
the piano was Hempsted's sole property, and was so in-
formed by Hempsted at the time of the indorsement by
him of the notes.    In 1886, Hempsted sold Snyder con-
tracts like the one assigned to the plaintiff, with the in-
dorsement of their filing in the city clerk's office on them.
In such cases Hempsted had reported and accounted for
the sales to the plaintiff as cash sales.    Smith advised Hemp-

sted two years before to throw aside that form of contract, and adopt the said method of taking the purchaser's notes like those in question, with the agreement in them reserving the title of the property to himself until paid. At that time Smith had no knowledge of Hempsted's relations with the plaintiff. Hempsted afterwards informed Smith that he did not use any more of these contracts, and that he took only negotiable notes in the form of those sold to Snyder.

It would seem, from these facts, that Hempsted had deceived both the plaintiff and Smith acting for Snyder. He made the plaintiff suppose that the contracts so assigned to the company were the only papers taken by him on the sale of pianos, and made Smith believe that the notes in this form were the only papers he received, by telling him so. He concealed from the plaintiff, also, the fact of his ever having negotiated any of such contracts, by reporting and paying them as cash sales.

Miner paid the instalments of the contract as they fell due, up to May 30, 1889, when Hempsted failed, at his office, and afterwards paid the plaintiff, taking back a bond of indemnity. Snyder obtained a judgment against Miner on said twelve months' note, in the court of George McWhorter, Esq., a justice of the peace, September 10, 1889, for $74.20. An execution on said judgment was placed in the hands of the appellant as constable, and was by him levied on said piano as the property of said Miner. At the same time of such levy the appellant, by the authority of Snyder, took possession of said piano by virtue of the agreement appended to said notes.

The plaintiff brought this action of replevin in the *detinet* against the appellant for the amount of its lien on the piano. The defense to the action consists of the above-stipulated facts. The plaintiff obtained judgment, and the defendant has appealed to this court therefrom.

The above statement of the facts is, in substance, accord-ing to the stipulation of the parties, and is necessarily some-what lengthy, in order to make intelligible the questions of law involved: The defense depends upon the protection which the law gives the said Snyder as a *bona fide* pur-chaser for value of the said notes before their maturity, and the plaintiff relies for title upon the contract so as-signed to the company by Hempsted, and the first ques-tion to be considered is the negotiability of these instru-ments.

1. The learned counsel of the respondent contends that, if the said contract is not negotiable, then the said notes are not, they being a part of the same transaction. That might be so if Snyder knew that the contract and the notes were a part of the same transaction, or that there was such a contract, but there is no evidence that he did so know; or if there is anything in the notes proper or the agreement reserving the title, appended thereto, that made any refer-ence to the contract, so as to put the holder of the notes upon notice or inquiry of the contract. But there is not.

2. That the notes are not negotiable. The agreement, reserving the title of the piano as security, does not affect or change the notes in the least, nor make the time of pay-ment or the amount to be paid at all uncertain. It is a distinct and independent agreement, incident to, but no part of, the notes. The negotiability of the notes is be-yond question.

3. The learned counsel of the appellant contends that the contract so transferred to the plaintiff is not negotiable, because both the time of payment and the amount to be paid are uncertain. There is, first, a regular promissory note for $290, payable in monthly instalments of $15 each, with interest thereon at seven per cent. per annum. That is certain enough, both as to time and amount. But, ac-cording to the contract following, in case of default in any

payment, or an attempt to dispose of or remove the instrument from Milwaukee county, the holder has the option to declare the whole sum unpaid, due and payable, and to sue for and collect the same, with *ten per cent. damages for expenses for collection*, which the signer agrees to pay, or to take and sell the instrument, and out of the proceeds of the sale to pay the unpaid balance of said note, *interest, damages, expenses*, and *costs of sale*, and, if the instrument does not sell for sufficient to pay the note, interest, *damages*, and *costs of sale*, the signer agrees to pay the *deficiency on demand*. The instalments may become due monthly, or they may all become due at once, on default of the payer, at the option of the payee, and the deficiency is payable *on demand*. The amount of the note may be $15 monthly, with seven per cent. interest per annum, or that and ten per cent. damages for expenses of *collection*, and damages, expenses, and costs of *sale* added thereto. What amount is it or will it be? These provisions of the contract change and qualify the note, and become a part of it. It is essential to the negotiability of a promissory note that the promise must be to pay a *certain sum* of money *unconditionally*. In *First Nat. Bank v. Larsen*, 60 Wis. 206, the agreement appended to the note was: " If this note is not paid at maturity, I agree to pay ten per cent. attorney's fees thereon in addition thereto, for the collection thereof." It was held — *First*, that such a stipulation is valid and obligatory; and, *second*, that the amount fixed is not conclusive, but must be determined by the court within the amount stated; and, *thirdly*, that this uncertainty in the amount rendered the note non-negotiable. The late Mr. Justice TAYLOR made an exhaustive review of authorities upon the question, and it must be considered settled. In this case the " ten per cent. damages for expenses of collection " may be collected before any instalment is due, if there is an attempt to dispose of or remove the property, which is a stronger

case and supported by more authorities than if it were only collectible after the note has matured. In this case it is collectible before or after maturity. The above case is so exactly in point that no other authorities need be cited. In this case there is another and parallel charge, "for damages, expenses, and costs of sale," which may be collected of the maker of the note, and is still more uncertain in amount, because without any limit whatever. The note called the "contract," and so assigned to the plaintiff by Hempsted, must therefore be held to be not negotiable, because uncertain in amount.

But it is equally uncertain as to the time of payment. In *Continental Nat. Bank v. McGeoch*, 73 Wis. 332, one of the conditions of the agreement appended to the note was: The payee after maturity of the note, or before if the security becomes depreciated, may sell the collateral security, and apply the proceeds to the payment of the note, interest, and expenses, and, in case it shall not cover them, the maker "*promises to pay the deficiency forthwith* after such sale, with interest at eight per cent. per annum." It was held that this condition introduced an element of uncertainty of time of payment that rendered the note non-negotiable. Mr. Justice LYON wrote the opinion, and it was so held on a like exhaustive review of the authorities, and this question, also, must be considered settled. The condition here is that after the sale the maker "*agrees to pay the deficiency on demand*." This is more uncertain than "forthwith." The note may become due according to its terms, or the whole or part of it, according to the agreement, "*on demand*." The above case is exactly in point, and settles the question beyond controversy. These are late cases, after a review of all previous cases in this court, as well as many cases elsewhere. We may be excused, therefore, from considering the cases cited by the learned counsel of the respondent on these questions.

W. W. Kimball Co. vs. Mellon.

4. The learned counsel of the appellant contends that the transfer of the notes to Snyder by indorsement, before due, also transferred the agreement appended thereto, by which the piano was to remain the property of the payee until payment, and was virtually a transfer of the property itself to Snyder, and, treating the property as security, it was incident to the debt or notes, and the assignment of the latter carries with it this incident security, and, if the note be negotiable, the security has the same quality and is equally protected. This appears to be a correct statement of the law. *Martineau v. McCollum*, 3 Pin. 455; *Fisher v. Otis*, 3 Pin. 78; *Croft v. Bunster*, 9 Wis. 503; *Cornell v. Hichens*, 11 Wis. 353; *Heath v. S. L. M. & S. Co.* 39 Wis. 146; *Crosby v. Roub*, 16 Wis. 616; *Kelley v. Whitney*, 45 Wis. 110. The principle is that where the security passes to the holder of a negotiable promissory note transferred before due, as an incident to the note, nothing is a defense to the security which would not in law be a defense to the note. See the above cases, and also *Andrews v. Hart*, 17 Wis. 297; *Blake v. Williams*, 36 N. H. 40; *Pratt v. Bank*, 10 Vt. 294; *Taylor v. Page*, 6 Allen, 86; *Jones v. Quinnipaick Bank*, 29 Conn. 29; *Burton v. Baxter*, 7 Blackf. 297. Although the security may be mentioned in the note, that does not make it necessary for the purchaser to examine into the history of the security. *Kelley v. Whitney*, 45 Wis. 110; *Howry v. Epplinger*, 34 Mich. 29. It follows, therefore, that the notes and security have priority over the contract, and that Snyder has a prior claim on the property on the questions of negotiability.

The next question to be considered is that of notice to Snyder, either actual or constructive, of the contract note so assigned to the plaintiff by Hempsted, and its incidental security on the piano.

1. The learned counsel of the respondent contend that he had notice by the filing of a copy of said contract note,

as a conditional sale of the piano. The statute (sec. 2317, R. S.) provides that "no contract for the sale of personal property, by the terms of which the title is to remain in the vendor and the possession thereof in the vendee until the purchase price is paid or other conditions of sale complied with, shall be valid as against any other person than the parties thereto and those having notice thereof, unless such contract shall be in writing, subscribed by the parties, and the same or a copy thereof shall be filed in the office of the clerk of the town, city, or village," etc. A copy of said contract was filed in the office of the city clerk of Milwaukee, July 7, 1888, and the transfer thereof was filed in the same office, May 11, 1889.

2. But the learned counsel of the appellant contends that the contract did not comply with the above statute, so as to authorize the filing of a copy thereof, or to make it valid or notice to third persons, in that it was not "subscribed by the *parties*." The parties to such a contract of sale are the vendor and the vendee. This contract was subscribed only by Miner, the vendee. It is too plain for argument that in this respect the contract is fatally defective, and as a conditional sale is void. The statute in clear and express terms declares that no such contract shall be valid "unless it shall be in writing subscribed by the parties." It follows that the contract is void as to third persons without notice, and the filing of a copy thereof is no constructive notice to such persons of the contract.

3. The respondent's counsel, to meet this objection, contend that if the contract is not of a conditional sale it is a *mortgage* of the piano, and therefore the filing of a copy thereof is constructive notice of it as such. It is not required that any one but the mortgagor shall sign a chattel mortgage, so that if this contract can be treated as a mortgage the filing of the copy was sufficient constructive notice. In states not having the above statute in relation to

conditional sales, there may have been decisions, by straining a point, that such contracts may be filed as mortgages. But it is very difficult to see how a contract for the sale of personal property, in which it is agreed that the title of the property shall remain in the vendor, and the possession in the vendee, until payment of the debt, can be called a mortgage by the most liberal construction. In a mortgage the title of the property is in the mortgagor as well as the possession. The mortgage is a mere incumbrance, and the mortgagor may sell and confer a good title, subject to such incumbrance. The two contracts are entirely different in form and essentially so in substance. This precise question may not have been decided by this court, but it has been frequently held that such a contract is a conditional sale and subject to the above statute. *Lillie v. Dunbar*, 62 Wis. 198; *Red Wing Mfg. Co. v. Moe*, 62 Wis. 240; *Rawson Mfg. Co. v. Richards*, 69 Wis. 643; *Thomas v. Richards*, 69 Wis. 671; *Mershon v. Moors*, 76 Wis. 502. In these cases it is held that such contracts are void as to third persons, unless made and filed in compliance with the above statute. It is not to be supposed that, if such contracts could have been executed and filed as chattel mortgages, the legislature would have enacted such a strict but useless statute.

4. It is objected, further, that this contract provides for the unconditional payment of the debt, and is therefore not strictly a conditional sale. But in all the last above cases the contracts provided for an unconditional payment of the debt, as also the contract decided to be a conditional sale in *Harkness v. Russell*, 118 U. S. 663. There is no such distinction in reason or by authority.

5. It is objected further that this contract does not provide for the possession to remain in the vendee, as required by the statute to make it a conditional sale. But the contract not only so provides in express terms, but implies it in all

of its provisions. The agreement is to sell and *deliver* the piano *to the signer.* In one provision the vendor may *take possession* on a certain contingency, and in another to *recover the possession.* The vendee must *keep it in Milwaukee* until payment and not *remove it.* This contract has the essential character of a conditional sale as provided in the statute, " by the terms of which the title is to remain in the vendor and the possession thereof in the vendee " until the purchase price is paid. " All the right and title to the above-named instrument is in H. N. Hempsted or his assigns," " and he may recover the possession with the full right to vest the title in another purchaser." That a copy of this contract cannot be filed as constructive notice to third persons, in consequence of such defect, is comparatively of less importance than that the defect itself renders the contract void. It is one of the essential ingredients of the contract, to make it valid, that it shall be subscribed by both parties. It is no answer to say that it may as well be filed as a chattel mortgage, for the instrument itself is void, if it is such a contract by the terms of which the title remains in the vendor and the possession in the vendee. The plaintiff has no title to the piano by virtue of this defective instrument, as against Snyder or any other third persons without notice. The legislature has seen fit to prescribe just what such a contract shall contain, and how it shall be executed, in order to be valid against any other person than the parties thereto. The plaintiff sets up this void contract as the only evidence of its title. The defendant sets up that he took possession of the property for Snyder by virtue of said negotiable notes and the appended agreement by which Snyder has the title to the property until such notes are paid. Snyder stands in the position of an innocent purchaser of the property, without notice, as well as an innocent holder of the notes. It is said that the plaintiff's title is paramount by reason of its having first acquired it. But that depends upon whether Snyder had

W. W. Kimball Co. vs. Mellon.

any notice of the plaintiff's title. We are compelled to hold that the filing of the contract gave him no notice, and that the contract in respect to the plaintiff's title is void.

Did Snyder have any actual notice of that contract, or was he in possession of such facts as would put him on inquiry of it? The evidence would seem to show that not only did Smith, his agent, have no notice of that contract, but he had reason to believe that no such contract was in existence. He supposed that Hempsted had taken his advice, and used only the form of notes with a reservation of the title, such as he purchased for Snyder. It appears clear enough that the plaintiff did not know of the notes, and Smith or Snyder did not know of the contract. When Snyder purchased the contracts, two or three years before, such notes were not given, or the matter duplicated in any way, and when he purchased the notes he supposed that such contracts were not made, but had been discontinued. There was nothing, in any fact within the knowledge of either Smith or Snyder, that could excite a suspicion that such a contract existed, or suggest any inquiry in that direction. It is very improbable that either of them would have purchased these notes with a suspicion even that there was another note for the same debt and with the same security outstanding.

In view, therefore, of the whole case, we must hold that the notes in the hands of Snyder were protected, and that the appended agreement, by which the title of the piano was to remain in Hempsted or *his assigns* until the notes are paid, gave him the right to take and hold it as against the plaintiff or any one else, and that the defendant had the right to take possession of it by the order of Snyder.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment in favor of the defendant.

A motion for a rehearing was denied September 29, 1891.