THORP, Respondent, vs. MINDEMAN and wife, imp., Appel-
lants.

*October 19—November 15, 1904.*

*Contemporaneous contracts: Construing together: Note and mort-
gage: Negotiable instruments: Collateral agreements: Statutes:
Indorsement "without recourse:" Principal and agent: Fore-
closure: Receivers.*

1. Under the rule that contemporaneous instruments relating to
   the same subject matter are to be construed together, con-
   struing together simply means that, if there be any provisions
   in one instrument limiting, explaining, or otherwise affecting
   the provisions of another, they will be given effect as between
   the parties themselves and all persons charged with notice,
   so that the intent of the parties may be carried out, and the
   whole agreement actually made may be effectuated. This does
   not mean that the provisions of one instrument are imported
   bodily into another, contrary to the intent of the parties.
2. While an ordinary negotiable note, accompanied by the ordinary
   real-estate mortgage with the ordinary covenants to pay taxes,
   etc., form two separate contracts, and are parts of the same
   transaction, each relates to its own subject matter, and does
   not interfere with the other. Covenants in the mortgage to
   pay taxes and exhibit the receipts, to effect and maintain in-
   surance on buildings for mortgagee's benefit, and that in case
   of default the mortgagee may insure and have a lien for the
   amount of premiums and taxes paid "added" to the amount
   of note, are simply agreements for the preservation of the se-
   curity, are not intended nor fitted to qualify or affect in any
   way the absolute promises of the note, and do not enter into or
   change the note in the least, nor affect its negotiability.
3. Sec. 1675—1, ch. 356, Laws of 1899, requires, among other things,
   that negotiable paper must contain an unconditional promise
   or order to pay a sum certain in money, and be payable on de-
   mand or at a fixed or determinable future time. Sec. 1675—2
   provides that the sum is certain, within the meaning of the law,
   though it is to be paid by installments, with provisions that
   upon default in payment of any installment or of interest the
   whole shall become due. And sec. 1675—4 declares that an in-
   strument is payable at a determinable future time which is
   payable at a fixed period after date or sight, though payable be-
   fore then on a contingency. *Held*, that an ordinary promissory

note, secured by a real-estate mortgage, is negotiable, although it provided that on default in interest or failure to comply with any of the conditions of the mortgage, the whole principal should, at the option of the mortgagee, become due and payable. *Continental Nat. Bank v. McGeoch,* 73 Wis. 332, and *W. W. Kimball Co. v. Mellon,* 80 Wis. 133, overruled.

4. Under sec. 1676—8, ch. 356, Laws of 1899, the addition of the words "without recourse" to an indorsement on the back of a negotiable note: "For value received, I hereby sell, transfer and assign the within note," does not impair the negotiable character of the instrument.

5. Such indorsement is a commercial indorsement, and not a mere assignment, and, when accompanying a transfer before maturity, the transferee takes the note freed from all equities.

6. In an action to foreclose a mortgage securing a negotiable note, the evidence considered, and *held* insufficient to establish that when plaintiff bought the note and mortgage from the mortgagee, the plaintiff made the mortgagee her agent, so as to charge plaintiff with the agent's knowledge.

7. In an action to foreclose a mortgage, where there was an ample showing justifying the appointment of ·a receiver with power to collect rents, etc., the mortgagor is not prejudiced by the inclusion in the receivership of a part of the premises on which the rent has been paid in advance for more than the period of redemption.

APPEAL from a judgment and order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

This is an action to foreclose a note and mortgage given by the defendants *Mindeman* and wife to one Henry Herman, the defense being an entire want of consideration. The note was a promissory note for $6,500, dated December 11, 1900, payable three years after date, with interest at five per cent. per annum, semiannually, and contained the following provisions inserted before the signature:

"The payment of this note is secured by a mortgage of even date herewith on real estate. If default shall be made in the payment of interest, or in case of failure to comply with any of the conditions or. agreements of the mortgage collateral hereto, then the whole amount of the principal

shall, at the option of the mortgagee, or his representatives or assigns (notice of such option being hereby expressly waived), become due and payable without any notice whatever."

The mortgage accompanying the note contained the following provisions:

"Provided, always, and these presents are upon this express condition, that if the said parties of the first part, their heirs, executors and administrators, shall pay or cause to be paid to the said party of the second part, his heirs, executors, administrators or assigns, the just and full sum of sixty-five hundred ($6,500) dollars three years after date with interest at five per cent. per annum, interest payable semi-annually according to the conditions of one promissory note and coupons bearing even date herewith, executed by the said *George Mindeman,* one of the parties of the first part, to the said party of the second part, and shall moreover pay annually to the proper officers all taxes which shall be assessed on the said premises and shall deliver or exhibit receipts therefor to said party of the second part, his heirs, executors, administrators or assigns, on or before the first day of May next after such taxes shall have become due and payable, and shall insure and keep insured the buildings thereon or to be hereafter erected against loss or damage by fire in the sum of eight thousand dollars or over, in insurance companies to be approved by the said party of the second part, his heirs, executors, administrators or assigns, such insurance to be payable in case of loss to the said party of the second part, his heirs, executors, administrators or assigns, as his mortgage interest may appear, and the policy or policies of insurance to be held by him, and in default thereof it shall be lawful for the said party of the second part, his heirs, executors, administrators or assigns, to effect such insurance, and the premiums and other legal expenses and charges paid for effecting the same, together with interest thereon at the rate of ten per cent. per annum, shall be a lien upon the said mortgaged premises added to the amount of the said note, and secured by these presents until the payment of said note, then these presents shall be null and void. But in case of the non-payment of any sum of money (either principal, interest or taxes) at the time when the same shall become due, or of

failure to insure said building agreeably to the conditions of these presents, or in case of failure to deliver or exhibit such receipt as above provided, or in case of failure on the part of said parties of the first part to keep or perform any other agreement, stipulation or condition herein contained, then in each case or all of such cases, the whole amount of the said principal sum shall, at the option of the said party of the second part, his heirs, executors, administrators or assigns, which may be exercised at any time after any default, without any notice whatever to the mortgagors or either of them, their heirs, executors, administrators or assigns, service or giving such notice in any manner being hereby expressly waived, be deemed to have become due, and the same with interest thereon at the rate aforesaid shall thereupon be collectible in a suit at law or by foreclosure of this mortgage, in the same manner as if the whole of said principal sum had been made payable at the time when any such failure shall occur as aforesaid."

It appeared from the testimony of the defendant *Mindeman,* which was taken under objection, that the note and mortgage was given to cover advances to be made to him by Herman, but that none were ever in fact made. September 11, 1902, Herman sold the note and mortgage to the plaintiff, who was an innocent purchaser thereof, and made the following indorsement upon the note:

"For value received, I hereby sell, transfer and assign the within note and the interest coupons thereto attached and numbered four to six inclusive (previous interest coupons having been paid and surrendered), to *Josephine Thorp,* without recourse."

Findings and judgment of foreclosure were made and signed, and the *Mindemans* appealed from the judgment as well as from a subsequent order appointing a receiver.

*Charles J. Weaver,* for the appellants.

*Thomas L. Kennan,* for the respondent.

WINSLOW, J.    The important question in this case is whether the note in suit is negotiable.    The appellants argue

that the note and mortgage must be construed together as one contract; that, so construed, the note requires the performance of other acts besides the payment of money, and is rendered uncertain both as to amount and time of payment, and hence is nonnegotiable. The general rule' that agreements contemporaneously executed and pertaining to the same subject matter are to be construed together is so familiar and so frequently acted upon that it needs only to be stated. The question how far, if at all, this rule imports into a promissory note the collateral agreements contained in an accompanying mortgage, is the question to be considered in this case. The collateral agreements contained in the mortgage, which the appellants claim are imported into the note and destroy its negotiability, are: *first,* the agreement that, in case of failure by the mortgagor to insure the buildings in the mortgagee's favor in approved insurance companies, the mortgagee may insure the same, and the premiums paid shall be a lien on the premises "added to" the amount of the note; and, *second,* the agreement that in case of failure to so insure, or to pay interest or taxes when due, or to deliver or exhibit tax receipts showing the payment of the taxes, then the whole principal shall become due at the mortgagee's option, and without notice. It will be observed that the only one of these agreements which the note contains *in terms* is the agreement that the principal shall become due without notice, at the option of the mortgagee, upon failure to pay interest or comply with any of the other conditions of the mortgage; but the argument is, in effect, that all of the collateral agreements in the mortgage have become a part of the note by virtue of the legal principle just stated. This is a decidedly revolutionary proposition. If it be true, both the business world and the courts have been sadly in error for many years. This court held at an early day that a note negotiable on its face retained its negotiable character notwithstanding it was secured by a mortgage upon real estate, and, when transferred before due,

carried the mortgage with it relieved of all equities (*Croft v. Bunster,* 9 Wis. 503); and that the words "secured by real-estate mortgage" upon the face of the note were not sufficient to charge the assignee with notice of any defense, nor of the terms of mortgage (*Kelley v. Whitney,* 45 Wis. 110; *Boyle v. Lybrand,* 113 Wis. 79, 88 N. W. 904). (If all the agreements contained in every mortgage are, as matter of law, imported into the note, these propositions could not be true, for the general rule (except as changed by statute) is that negotiable instruments cannot be bound up and fettered with collateral agreements for the doing of other things besides the payment of money, and retain their negotiable character. Upon the principle contended for, the most simple real-estate mortgage would deprive the note which it secures of its negotiable character, because it would import into the note one or more collateral agreements which are not for the payment of money. Fortunately it is not necessary to give so violent a shock to the well understood principles of law governing the negotiability of notes and mortgages.) The appellants' contention really results from a confusion of ideas. They lay down the well-understood proposition that contemporaneous instruments relating to the same subject matter are to be construed together, and conclude that it follows that a note and mortgage, though separately executed, are one instrument, and that the note is that instrument. The rule that instruments are to be construed together does not lead to this result. Construing together simply means that, if there be any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties themselves and all persons charged with notice, so that the intent of the parties may be carried out, and that the whole agreement actually made may be effectuated. This does not mean that the provisions of one instrument are imported bodily into another, contrary to the intent of the parties. They may be intended to be separate

instruments, and to provide for entirely different things, as in the very case before us. The note is given as evidence of the debt and to fix the terms and time of payment. It is usually complete in itself—a single, absolute obligation. The purpose of the mortgage is simply to pledge certain property as security for the payment of the note. The agreements which it contains ordinarily have no bearing on the absolute engagements of the note, but simply relate to the preservation of the security given by its terms; such as the payment of taxes, the insurance of houses, and the like. While the two instruments will be construed together whenever the question as to the nature of the actual transaction becomes material, this does not mean that the mortgage becomes incorporated into the note, nor that the collateral agreements to pay the taxes, or to insure the property, or that the mortgagee might insure in case of default by the mortgagor and have an additional lien therefor, become parts of the note. These agreements pertain to another subject, namely, the preservation intact of the mortgaged property. The promise to pay is one distinct agreement, and, if couched in proper terms, is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely, and sue and recover on his note; and the fact that a mortgage had been given with the note, containing all manner of agreements relating simply to the preservation of the security, would cut no figure. A pleading alleging such facts would be stricken out as frivolous or irrelevant.

This idea is well expressed in the case of *Garnett v. Myers* (Neb.) 94 N. W. 803, where it is said:

"If the terms and conditions of the mortgage are limited to the proper province of the mortgage—that is, to provide security for the indebtedness—its provisions relating solely

to the security will not affect the negotiability of the note. If the holder of the note is compelled to pay the taxes or insurance on the mortgaged property to protect the security, and is afterwards allowed to recover the amount so paid in addition to the principal indebtedness, this does not affect the amount of the indebtedness itself."

It may be added to this that provisions to that effect in the mortgage do not affect at all the absolute character of the promise to pay contained in the note, and hence do not affect its negotiability. A very interesting and instructive discussion of this question will be found in the opinion in the case of *Frost v. Fisher,* 13 Colo. App. 322, 58 Pac. 872, where the same conclusion is reached.

The propositions so far laid down seem incontrovertible if the principle is to be maintained that a note negotiable in form remains negotiable notwithstanding it is secured by an ordinary real-estate mortgage. As might be expected, we are referred to no authorities which really take issue with that principle, or squarely hold that the agreements of every mortgage are imported into the accompanying note. The nearest approach to such a holding, perhaps, is the case of *Noell v. Gaines,* 68 Mo. 649, where a provision in a deed of trust as to the time of payment of the debt was held to control the terms of the note in the hands of a purchaser with notice. A very vigorous and persuasive dissenting opinion was filed in this case, which forms instructive reading on this very question; but, in any event, the case does not reach the proposition that agreements in a mortgage, simply relating to the preservation of the security, are ever to be considered as imported into the note. Starting from the fundamental proposition that the ordinary negotiable note, accompanied by the ordinary real-estate mortgage with the ordinary covenants to pay taxes, etc., form two separate contracts, both being a part of the same transaction, but each relating to its own subject matter and not interfering with the other, just as a build-

ing contract and a bond to secure its performance are sepa--
rate and distinct, let us consider in what respect, if any, the·
note and mortgage in this case differ from the ordinary note·
and mortgage.

As will be seen by reference to the papers themselves, the·
mortgage contains conditions requiring the payment of taxes·
on the premises by the mortgagor; the exhibition of the re-
ceipts therefor to the mortgagee; the maintenance of insur-
ance on the buildings in approved companies, with the right
to the mortgagee to insure in case of failure of the mortgagor,.
the expense to be a lien on the premises "added to the·
amount" of the note; also a provision that in case of failure·
to pay interest, taxes, or insurance, or to exhibit the tax re-
ceipts, the principal sum shall, at the option of the mort-
gagee, become due without notice.  Turning to the note, we·
find that it provides that, if default is made in payment of
interest, or in case of failure to comply with any of the con--
ditions or agreements of the mortgage, then the principal
shall' become due, at the option of the mortgagee, without·
notice.  It will be noticed at once that none of the collateral
agreements of the mortgage are in terms imported into the
note except the agreement that the principal shall become·
due, at the mortgagee's option, in case of failure to perform
any·of the agreements of the mortgage.  It will be noticed
also that the other collateral agreements contained in the:
mortgage are simply agreements providing for the due pres-
ervation of the mortgage security, and not affecting in any
way either the time of payment or the amount of the note.
These agreements are the agreement to pay the taxes and ex-
hibit the receipts, the agreement to effect and maintain in-
surance on the buildings for the mortgagee's benefit, and the·
agreement that the mortgagee may insure in case of default,
and have a lien on the premises "added" to the note for the
premiums paid.  There was, indeed, a claim made that the·
agreement that the premiums paid should constitute a lien

added to the note meant that the note was to be increased by the amount paid, so that the amount of the note was thereby rendered uncertain; but we think it plain that the clause simply provides for the acquiring of a lien upon the premises in addition to the lien of the note. This meaning seems so obvious to us that we will spend no more time upon the suggestion.

These last-named collateral agreements, then, being simply proper agreements for the preservation of the security, and not intended nor fitted to qualify or affect in any way the absolute promises of the note, do not, upon the principles hereinbefore laid down, enter into or change the note in the least, nor affect its negotiability. Such being the case, we have only to consider the question whether the agreement that the whole principal of the note shall be due at the mortgagee's option in case of a failure to pay interest or perform any of the conditions of the mortgage renders the note nonnegotiable. Upon this question appellant places reliance upon the cases of *Continental Nat. Bank v. McGeoch,* 73 Wis. 332, 41 N. W. 409, and *W. W. Kimball Co. v. Mellon,* 80 Wis. 133, 48 N. W. 1100. In the first of these cases, an agreement inserted in the note, providing that the payee might sell collateral securities at any time if they declined in value, and apply the proceeds, less expense of sale, on the debt, and the balance should forthwith become due, was held to make the note uncertain as to amount and time of payment, and hence nonnegotiable. In the *Kimball Case,* an agreement that, in case of failure to pay any instalment, or of any attempt to dispose of or remove the chattel for which the note was given, the holder might declare the whole amount due, and collect same by suit or sale of the property, and, if there was a deficiency after sale, it should be payable on demand, was held to make both amount and time of payment uncertain; and hence make the note nonnegotiable. It must be admitted that both of these cases have a strong tendency to support the

position of the appellants upon the proposition that the time
of payment is rendered uncertain by the agreement before us.
Especially is this true of the *Kimball Case*. In that case the
uncertainty as to time resulted from the fact that, in case
the giver of the note failed to pay an instalment, or at-
tempted to dispose of or remove the property sold, the holder
might at once collect the whole. In the present case the
agreement is that in case of failure to pay interest or keep
taxes and insurance paid the holder may at once collect the
whole. In both cases the contingency depends upon the acts
or omissions of the maker of the note.

We should find it quite hard, if not impossible, to differ-
entiate the two cases were it not for the provisions of the ne-
gotiable instruments law (ch. 356, Laws of 1899), which was
passed since the decisions cited, and prior to the giving of the
note in question. This law gives the general requirements of
negotiable paper in sec. 1675—1, among which are the fol-
lowing:

"(1) It must be in writing signed by the maker or drawer.
(2) Must contain an unconditional promise or order to pay
a sum certain in money. (3) Must be payable on demand
or at a fixed or determinable future time."

The law then provides, in sec. 1675—2, that the sum is cer-
tain within the meaning of the law though it is to be paid
"(3) by stated instalments, with a provision that upon de-
fault in payment of any instalment *or of interest* the whole
shall become due."/The law further provides, in sec. 1675—4,
that an instrument is payable at a determinable future time,
within the meaning of the law, which is payable "(4) at a
fixed period after date or sight, though payable before then
on a contingency." These two provisions seem to cover this
whole case, and leave really nothing to-discuss. This note is
payable at a fixed period after date, but may be made pay-
able before that time upon the happening of certain con-
tingencies which are within control of the maker. The latter

clause quoted would seem to have been added to meet just such cases as the present.   Such agreements as we have here are of very frequent occurrence, and it was evidently the purpose to provide for them.

The case of *Wisconsin Yearly Meeting v. Babler,* 115 Wis. 289, 91 N. W. 678, is also somewhat relied on by appellants, but it evidently has no bearing on the case.   In that case it was held that a clause in a note authorizing the confession of judgment *at any time,* whether due or not, rendered the note nonnegotiable, because the time of payment depended entirely on the whim or caprice of the maker.   As an additional reason for the ruling, the fact that the negotiable instruments law allows the insertion of a clause authorizing a confession of judgment if not paid *at maturity* was also referred to.

While we have considered this question as absolutely settled by the negotiable instruments law, it must not be supposed that we have failed to examine and carefully consider the numerous cases cited by the appellants, mostly from western courts, as having some bearing upon this question. We have been unable to find that any of these cases really conflict with the general proposition laid down in the beginning, namely, the proposition that the ordinary provisions of a real-estate mortgage requiring payment of taxes and other acts by the mortgagor for the preservation of the mortgaged property are not imported into the accompanying note simply because the papers are simultaneously executed as a part of the same transaction.   A number of them are cases decided by the Kansas Court of Appeals, and are, in substance, to the effect that, where a bond or note in terms refers to the mortgage, and declares it to be "a part of this contract," and the mortgage contains covenants to pay taxes, insure, keep buildings in repair, and the like, and that the entire sum shall become due in case of default in any of such agreements, this renders the bond or note nonnegotiable.   Such are the cases of *Lockrow v. Cline,* 4 Kan. App. 716, 46 Pac. 720; *Chapman*

*v. Steiner,* 5 Kan. App. 326, 48 Pac. 607, and *Wistrand v. Parker,* 7 Kan. App. 562, 52 Pac. 59. It goes without saying that such cases have no bearing on the present case, because here there is no clause in the note making the mortgage a part thereof, or adopting its provisions, except the provision authorizing the whole amount to be declared due upon certain contingencies.

Another line of cases, from Nebraska, holds that, where a mortgage provides that the mortgagor shall pay the taxes levied on the *mortgagee* for or on account of the mortgage, this agreement destroys the negotiability of the note, because it renders the amount uncertain. *Garnett v. Meyers* (Neb.) 94 N. W. 803; *Consterdine v. Moore* (Neb.) 96 N. W. 1021; *Allen v. Dunn* (Neb.) 99 N. W. 680. Such seems also to be the effect of the case of *Brooke v. Struthers,* 110 Mich. 562, 68 N. W. 272. Without stopping to consider whether these decisions should be approved or not, it is enough to say that they are not at all in conflict with the present decision. The agreement to pay taxes was to pay taxes which might be levied on the mortgagee, not the taxes on the mortgaged property; hence the agreement had no connection with the preservation of the security, and was construed by the courts as an agreement to pay an indefinite sum as a part of the note.

In the cases of *Donaldson v. Grant,* 15 Utah, 231, 49 Pac. 779, and *Gilbert v. Nelson,* 5 Kan. App. 528, 48 Pac. 207, notes containing stipulations very similar to those found in the present case are pronounced nonnegotiable upon what seems to us very unsatisfactory reasoning, which we feel no inclination to follow, especially in view of the positive provisions of our negotiable instruments law before cited.

The cases of *Dilley v. Van Wie,* 6 Wis. 209, and *Elmore v. Hoffman,* 6 Wis. 68, are also cited as sustaining appellants' contention, but it is evident that they do not. In the *Dilley Case* the note contained an express clause subjecting it to the provisions of another agreement, made on the same day,

by which it appeared that the payment was subject to certain equities between the parties. The clause was rightly held to deprive the paper of its negotiable character. In the *Elmore Case* it was held that a collateral agreement made between the parties contemporaneously with a note, by which the payee agreed to give day of payment on the note till the happening of a certain named contingency, was admissible in evidence to defeat an action on the note in the hands of one who purchased the note with notice of the contemporaneous agreement. We hold, therefore, that under the present negotiable instruments law the note in the present case is negotiable, and in so holding it is evident that the cases of *Continental Nat. Bank v. McGeoch,* 73 Wis. 332, 41 N. W. 409, and *W. W. Kimball Co. v. Mellon,* 80 Wis. 133, 48 N. W. 1100, are overruled so far, at least, as they hold that such agreements create an uncertainty in the time of payment.

The next contention made by the appellants is that the written transfer of the note was not a commercial indorsement, but a mere assignment, and hence that the transferee took it subject to all equities. We think this contention cannot be sustained. The addition of the words "without recourse" does not impair the negotiable character of the instrument. Laws of 1899, ch. 356, sec. 1676—8. While there is doubtless some authority tending to support appellants' claim, we think that there can be no doubt that the transfer in the present case must be held to be a commercial indorsement under the decisions of this court in the cases of *Crosby v. Roub,* 16 Wis. 616; *Bange v. Flint,* 25 Wis. 544; *Murphy v. Dunning,* 30 Wis. 296. In all of these cases a negotiable note was transferred by attaching it to a negotiable bond which recited that the note was thereby "assigned and transferred" to the holder of the bond as security for the payment of the bond, there being no indorsement on the note itself; and this was held an indorsement within the law merchant. Here there is an agreement on the back of the note itself,

Thorp v. Mindeman, 123 Wis. 149.

signed by the payee, by which he sells, assigns, and transfers the note to the plaintiff. The intent to pass title and make the note transferable by indorsement and delivery afterwards seems very plain. Such, also, seems to be the current of authority. 1 Daniel, Neg. Inst. (5th ed.) § 688c.

But it is argued that the evidence shows that the plaintiff made Herman her agent in buying the note and mortgage, and that Herman's knowledge was consequently her knowledge. There is really nothing in the evidence which substantiates this claim. The plaintiff was the only witness on the subject, and she testified that she purchased the mortgage of Herman herself, and paid the full principal sum therefor; that she went to his office for the purpose of buying mortgages, and told him she had some money to invest, and purchased this mortgage of him; that she looked at a number, and he read over several he had for sale; that he said they were first mortgages, and she took his word for what they were, and trusted his judgment. There is nothing to show that Herman was at any time plaintiff's agent, or had her money to invest, or that the transaction was anything but a purchase by the plaintiff and a sale by Herman. True, she says that she presumed Herman was acting for her, and that she took his judgment in the matter, but these statements are clearly merely the expression of the idea that she was relying on his statements that the mortgages were first mortgages, and desirable securities to purchase.

After judgment was entered upon affidavits showing that the premises were inadequate security for the loan, and were in need of repair, the court appointed a receiver, with power to collect rents, etc. The defendants *Mindeman* and wife appeal from this order "in so far as said order and from that part of said order, which applies to the lower flat of said building on said premises." It appeared by affidavit that the lower flat of the building was in possession of a tenant, who had paid rent in advance for more than the period of re-

demption, and it is urged that the receiver could collect nothing of him, and hence that this part of the premises should have been omitted in the order. We are unable to see any merit in this appeal. If there are vested rights in this tenant, doubtless he can protect them, and protect them equally well however the order appointing a receiver runs. Nor does the inclusion of the lower flat affect the defendant *Mindeman* in the least, because the rent has been paid to him according to the affidavit. There was an ample showing justifying the appointment of the receiver.

*By the Court.*—Judgment and order appealed from affirmed.