[No. 2102]

DILLON & WEST, INCORPORATED, Respondents, v. EUGENE GRUTT, as Sheriff of Mineral County, and NELSON POLI, Appellants.

[144 Pac. 741]

1. Sales—Conditional Sales—Title of Buyer.
    Under a conditional sale contract which stipulates that the chattels shall remain the property of the seller until paid for, title does not pass to the buyer obtaining and retaining possession, but not paying the price.

2. Sales—Conditional Sales—Rights of Assignee of Seller.
    Where a seller in a conditional sale contract reserving title until the price was paid assigned the contract, the assignee succeeded to the rights of ownership of the seller until the price was paid.

3. Sales—Conditional Sales—Retention of Title Until Payment of Price—Performance.
    A conditional contract for the sale of mining machinery bound the buyer to deposit with a third person all bullion extracted from his mining properties until the price was paid, and provided that the title should remain in the seller until the price was paid. The buyer deposited bullion in excess of the price, under an agreement that the third person should apply the same in payment of labor claims, royalties on ore produced, and supplies furnished to the buyer for the operation of the property. Held, that the deposit of the bullion was not a payment of the price because the original contract was modified by the subsequent agreement.

4. SALES—CONDITIONAL SALES—RESERVATION OF TITLE—SUBSEQUENT AGREEMENTS.

A conditional contract of sale which reserved the title in the seller until the price was paid was assigned by the seller, and thereafter the buyer gave a chattel mortgage of corporate stock to secure the price and for other claims due the assignee. The mortgage recited that the buyer had possession, but no title. Attached to the mortgage was an exhibit of the original contract which was also made a part of the mortgage. *Held,* that the mortgage reserved the title as against an execution creditor of the buyer.

5. SALES—CONDITIONAL SALES—RESERVATION OF TITLE—SUBSEQUENT AGREEMENTS.

A conditional sale contract of mining machinery stipulated that the title should remain in the seller until the price was paid, and recited that the buyer had deposited 50,000 shares of the capital stock as security. The seller assigned the contract and thereafter the buyer executed to the assignee a chattel mortgage on 71,000 shares of stock including the 50,000 shares as security for the payment of the price and other debts due him. The mortgage expressly recognized that the conditional sale was in force and that the title remained vested in the assignee. *Held,* that the mortgage did not operate as a waiver of the original conditional sale, and the assignee was not bound to exhaust his mortgage security before asserting title to the machinery to recover the price as against an execution creditor of the buyer levying on the machinery.

6. REPLEVIN—DAMAGES—EVIDENCE.

Where, in replevin, there was no proof that the property had any rental value or that the plaintiff had sustained any special damage because deprived of its use, a judgment for plaintiff should be for the value of the property, with interest thereon from the date of its wrongful seizure until the date of the judgment.

7. REPLEVIN—ATTORNEY'S FEES AND EXPENSES.

A plaintiff in replevin who obtains a judgment is not entitled to recover attorney's fees or expenses incidental to the action other than the costs properly accruing to the prevailing party in any action.

APPEAL from Seventh Judicial District Court, Mineral County; *Peter J. Somers,* Judge.

Action by Dillon & West, Incorporated, against Eugene Grutt, as Sheriff of Mineral County, Nevada, and another. From a judgment for plaintiff, the defendants appeal. **Modified and affirmed.**

*Mack & Green,* for Appellants.

*E. E. Hull,* for Respondent.

By the Court, NORCROSS, J.:

This is a suit in claim and delivery of personal property for the recovery of certain mining machinery and equipment in the possession of the appellant Eugene Grutt, as sheriff of Mineral County, by virtue of an execution issued in a certain civil action wherein the appellant Nelson Poli was plaintiff and one L. H. Bartholomew was defendant. Judgment for the return of the property and for $250 damages was rendered in favor of the plaintiff, respondent herein. From the judgment and from an order denying a motion for a new trial, defendant has appealed.

From the proceedings and record in the case it appears that on or about December 21, 1909, the said L. H. Bartholomew received from the Nevada Engineering Works, Roy & Bride, lessees, the machinery in question in the action under the terms and conditions of the following written agreement:

"Reno, Nevada, December 21st, 1909.

"Nevada Engineering Works, Roy & Bride, lessees, hereby agree to deliver to L. H. Bartholomew, *  *  * the following mining machinery and equipment, to wit: [Here follows description of the property in question.]

"Mr. L. Bartholomew agrees to pay for the above mentioned machinery the sum of one thousand three hundred and forty-seven dollars ($1,347.00), when delivered f. o. b. cars or as soon thereafter as possible.

"It is understood and agreed between both parties hereto that the said L. Bartholomew shall deposit with Dillon & West, Inc., of Yerington, all bullion of whatever nature or kind that may be extracted from the mining properties of the said L. H. Bartholomew until the full amount of $1,347.00 has been paid in full, provided, however, that in event the payment in full be made by or before the 1st of March, 1909, a discount of 10% (ten per cent) will be allowed.

"It is understood and agreed that the above mentioned machinery shall remain the property of the Nevada Engineering Works, Roy & Bride, lessees, until paid for in full.

"L. Bartholomew as a surety of his proper performance of the terms of this contract will deposit with the Nevada Engineering Works, Roy & Bride, lessees, 50,000 shares of the capital stock of the Northern Light Copper Co., which said stock may be sold for the account of the said Nevada Engineering Works, Roy & Bride, lessees, if the said sum of $1,347.00 be not paid in full within six months from date hereof."

Following the delivery of the property in question to the said L. Bartholomew, the latter deposited with Dillon & West, Inc., during the year 1910, bullion upon the dates and of the value following:

| | |
|---|---|
| April 13 | $326.51 |
| April 23 | 258.13 |
| May 4 | 404.97 |
| May 18 | 364.26 |
| May 27 | 180.11 |
| June 11 | 324.87 |
| June 27 | 353.66 |
| July 19 | 626.40 |
| Oct. 4 | 485.72 |
| Nov. 4 | 455.92 |
| Total | $3,770.55 |

It is one of the contentions of appellants that the first four deposits of bullion mentioned *supra,* aggregating in value $1,353.87, being an amount greater than the purchase price of the machinery in question by the terms of the contract, vested title thereto in the said Bartholomew. It appears from the evidence, however, that when deposits of bullion were made with Dillon & West by the said Bartholomew the latter requested that the amount derived from the bullion be applied in payment of labor claims, royalties on ore produced, and supplies furnished to Bartholomew for the operation of his mining property. It appears that Bartholomew was without means other than that derived from the sale of bullion and that in order to carry on his mining operations it was necessary that he obtain a large portion of the amount derived from the sale of bullion to apply upon his other indebtedness. Dillon & West advised the Nevada Engineering Works, Roy & Bride, lessees, of this situation and it clearly

appears from the evidence that they consented to the
diversion of the money derived from the sales of bullion
to the liquidation of other liabilities of Bartholomew
rather than their own. Of the total amount received
from the bullion deposited with Dillon & West only the
sum of $425 was remitted to the Nevada Engineering
Works and applied in discharge of the contract price of
the machinery furnished.

At the time of the delivery of the machinery to Barthol-
omew by the Nevada Engineering Works Bartholomew
was quite largely indebted to Dillon & West, and subse-
quently purchased a considerable amount of supplies from
the latter.

On August 18, 1910, the Nevada Engineering Works
sent to Dillon & West, and also to Bartholomew, a state-
ment of Bartholomew's account showing a balance unpaid
upon the machinery delivered amounting to $992.34, being
the same amount stated in the mortgage hereinafter
mentioned executed by the said Bartholomew to Dillon
& West on November 5, 1910. In September, 1910, the
Nevada Engineering Works, Roy & Bride, lessees, sold
and assigned to Dillon & West all of its and their rights,
title, and interest in and to the contract for the sale of
the machinery in question for the balance then due upon
the purchase price, viz, $992.34, less a commission of 5
per cent, and Dillon & West paid for the same with its
notes executed in September, 1910, which were thereafter
paid at maturity. The formal written assignment, how-
ever, was not executed until December 20, 1910. The
stock mentioned in the agreement which Bartholomew
deposited with the Nevada Engineering Works, "as a
surety of his proper performance" of the terms of sale
of the machinery, was by the Nevada Engineering Works
also turned over to Dillon & West, who then had the stock
transferred to its own name upon the books of the
Northern Light Copper Company as security for the pay-
ment to be made under the contract for the machinery.
Bartholomew had also transferred to Dillon & West a
further block of 21,000 shares of the capital stock of the
copper company as security for the payment of an item

of $2,063.46 due to Dillon & West from him on account of goods, wares, and merchandise purchased from Dillon & West by Bartholomew and other demands against the latter which had been assigned to Dillon & West. All of which stock, 71,000 shares, was held by Dillon & West at the date of the last deposit of bullion made by Bartholomew as security for the payment of the balance due upon the purchase price of the machinery and the store account.

Upon November 5, 1910, the said Bartholomew executed and delivered to Dillon & West a chattel mortgage on the said 71,000 shares of stock to secure the payment of $3,055.80, the total amount of the indebtedness of Bartholomew to Dillon & West. Attached to the mortgage as an exhibit and made a part thereof was a copy of the original agreement between Bartholomew and the Nevada Engineering Works, Roy & Bride, lessees. The mortgage contained the following recitals:

"And, whereas, said machinery was delivered to said L. Bartholomew in accordance with the terms of said agreement and ever since said delivery said machinery has been, and is now, in the possession of said L. Bartholomew; but no title, thereto, other than to the possession thereof under the terms of said agreement, has, or can, vest in said L. Bartholomew until payment of the full purchase price thereof has been made, which purchase price was and is the sum of one thousand three hundred and forty-seven ($1,347.00) dollars;

"And, whereas, said Nevada Engineering Works, Roy & Bride, lessees, has assigned and transferred to second party hereto, all of its and their right, title and interest in and to said agreement, and the balance of moneys due thereunder, together with all of their right, title and interest in and to said machinery, and second party is now the owner and holder thereof, and is entitled to payment of the balance of said purchase price set forth in said agreement so assigned, which balance of purchase price is the sum of nine hundred ninety-two and $\frac{34}{100}$ ($992.34) dollars, no part of which balance has been paid."

The 71,000 shares of stock so mortgaged included the

50,000 shares of stock originally transferred as security for the payment of the purchase price of the machinery in question.

The mortgage note was made payable January 5, 1911. Four days after maturity of the mortgage note, no payment having been made thereon, Dillon & West decided to take possession of the machinery and credit Bartholomew on his note with the balance of the purchase price still due, together with a small amount of interest accrued thereon. Accordingly, they wrote him a letter upon January 9, 1911, telling him to leave the mill where it then was and they would credit him with $1,000 upon his note. After receiving this letter Bartholomew called at Dillon & West's store at Yerington and stated that he had left the mill where it stood. Upon the 15th day of March, 1911, Dillon & West wrote a letter to Bartholomew containing a statement of his account as it then stood and showing a credit upon January 16, 1911, of $1,000 on account of taking over the mill and machinery by Dillon & West. This letter was received by Bartholomew about the time of its date. No reply to this letter was made by Bartholomew. Upon February 4, 1911, an action was instituted in the First judicial district court in and for the county of Lyon by the appellant Nelson Poli against Bartholomew, in which action a writ of attachment was issued, claimed by counsel for respondent to have been improvidently issued and void because of certain alleged defects, not necessary, we think, to be considered. Thereafter in said case the defendant Bartholomew confessed judgment in favor of the plaintiff Poli. Execution was thereupon issued upon said judgment and levied by appellant Grutt as sheriff of Mineral County.

Counsel for appellant base their contention for a reversal of this case substantially upon the following grounds:

1. That there was no sale or delivery of the mill by Bartholomew to Dillon & West and no "actual and continued change of possession."

2. That the only condition imposed upon the sale from the vendor to the vendee was a reservation of the title of the mill until the purchase price was paid by depositing bullion with Dillon & West, the agent of the conditional vendor, as provided in the contract. That on May 18, 1910, this condition had been fully performed by the deposit of the sum of $1,353.87 with Dillon & West and the title had vested in the vendee.

3. That the mortgage of November 5, 1910, was made to secure the purchase price of the mill and to secure other debts and by it there was mortgaged new and additional securities. That this mortgage contains "no express reservation" of the title of the mill, and constitutes a waiver of the original condition of the sale.

4. Dillon & West, having on November 5, 1910, taken a mortgage on 71,000 shares of the capital stock of the Northern Light Copper Company to secure payment of the purchase price of the mill, had no other remedy than to foreclose mortgage and have a deficiency decreed by the court before it could secure any other remedy against the debtor.

5. That the evidence is insufficient to support a judgment for damages in the case.

There is no merit in appellant's first contention, stated *supra*. No question of a sale of chattels without delivery of possession is involved in this case.

[1] Under the conditional sale agreement between Bartholomew and the Nevada Engineering Works, Roy & Bride, lessees, title to the mill machinery did not pass to Bartholomew. (*Cardinal* v. *Edwards,* 5 Nev. 36; *Central Loan and Trust Co.* v. *Campbell Co.,* 5 Okl. 412, 49 Pac. 53; *Russell* v. *Harkness,* 4 Utah, 206, 7 Pac. 869; *Rodgers* v. *Bachman,* 109 Cal. 555, 42 Pac. 448; *Lundy Furniture Co.* v. *White,* 128 Cal. 170, 60 Pac. 759, 79 Am. St. Rep. 41; *Kellogg* v. *Burr,* 126 Cal. 41, 58 Pac. 306.)

[2] By the assignment to Dillon & West of the original contract between the engineering works and Bartholomew, Dillon & West succeeded to the rights of ownership of the original vendors. (*Barton* v. *Groseclose,* 11

Idaho, 227, 81 Pac. 623; *Kimball Co.* v. *Mellon,* 80 Wis. 133, 48 N. W. 1100; 6 Am. & Eng. Enc. of Law, 2d ed. 485.)

[3] The deposits of bullion made by Bartholomew with Dillon & West, while exceeding in value the purchase price of the machinery, cannot be regarded as payment thereof, because the terms of the original agreement were modified by the subsequent agreement of the parties.

[4] The contention that the mortgage of November 5, 1910, contains no express reservation of the title of the mill machinery in Dillon & West is without merit. The language of that instrument is susceptible of no other construction.

[5] The same may also be said in reference to the contention that the mortgage gave new and additional security for the balance due for the machinery. True, 71,000 shares of stock were mortgaged for the entire indebtedness of Bartholomew to Dillon & West, but this amount of stock included 50,000 shares previously held as security for the purchase price of the machinery. In effect, this security for the machinery debt was reduced nearly one-half. The mortgage did not operate, as contended, as a waiver of the original conditional sale, but, upon the contrary, the mortgage expressly recognized that the conditional sale was still in force and the title still vested in Dillon & West. Under these circumstances Dillon & West were not bound to exhaust their mortgage security before asserting title to the machinery, for they never parted with such title.

[6-7] There was no allegation or proof of special damage due to the detention of the property involved in the action. The only evidence on the question of damages was the following:

"Dillon & West, Inc., have been damaged by reason of the taking of possession of the property involved in this action by the defendants and of being deprived of its possession and use and ·by reason of being obliged to bring this action to recover its possession, expenses inci-

dent to this action for its recovery, payment of attorney's fees, etc., about four hundred dollars."

This evidence was admitted over defendants' objection and exception. It will be seen that there was no proof that the property had any rental value or that the plaintiff was occasioned any special damage because deprived of the use of the property. There is no statutory or other warrant for allowing attorney's fees or the expenses incident to the action other than the costs that would properly accrue to the prevailing party in any action.

"Unless the property in suit has a usable value and damages are estimated on that basis, the prevailing party in replevin will be awarded interest on the value of the property during the time of the wrongful detention; and in the absence of facts which would authorize the application of any different rule, as for instance depreciation in the value of the property, or bad faith, fraud, malice, gross negligence, or oppression on the part of the adverse party, or a special agreement between the parties that the jury might find the value of the property and the damages in one sum, such interest constitutes the measure of damages." (34 Cyc. p. 1560.)

The alleged value of the property in controversy is $1,000. Interest on the value of the property at the legal rate from February 10, 1911, the date of seizure under the attachment, to May 20, 1912, the date of the judgment, would be $88.95.

The judgment for damages will be modified by reducing the same to the amount of $88.95, and as so modified, the judgment for damages and for the return of the property is affirmed.