## FIRST NATIONAL BANK OF ELGIN, ILLINOIS, *v.* LON RUSSELL.

### (*Jackson.* April Term, 1911.)

1. **BILLS AND NOTES.** Merely suspicious circumstances do not coistitute, under negotiable instruments law, sufficient proof of bad faith to impute to purchaser knowledge of infirmity or defect in title.

While the facts that a bank purchaser of notes took them without profit, except the six per cent interest they bore, and sent them to a distant State for collection by suit against the maker, thus ignoring and overlooking the solvent seller and indorser, who had been rendered liable to such holder by demand, protest, and notice, and who lived in the immediate vicinity of such holder's place of business, constitute suspicious circumstances of collusion between the seller and the purchaser of the notes, yet they are insufficient, without proof of actual knowledge of any infirmity or defect on the part of such holder, to charge it with the knowledge of such facts that its action in taking the notes amounted to bad faith, which will, under the negotiable instruments law (Acts 1899, ch. 94, sec. 56), charge it with notice of infirmity in the notes. (*Post, pp.* 621-624.)

Acts cited and construed: Acts 1899, ch. 94, sec. 56.

2. **SAME.** Instrument, to be negotiable, must be payable at a determinable future time; what constitutes such time.

In order to render any instrument negotiable under the law merchant and under the negotiable instruments law (Acts 1899, ch. 94, sec. 4), it must be payable at a determinable future time; that is, at a fixed period after date or sight; or on or before a fixed or determinable future time expressed therein; or on or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain. (*Post, p.* 625.)

Acts cited and construed: Acts 1899, ch. 94, sec. 4.

Bank v. Russell.

3. **SAME. Same. Note purporting to be payable at a fixed date, but authorizing confession of judgment at any time after date, is not negotiable.**

A promissory note purporting to be due and payable at a fixed date after its execution, but containing a warrant or power of attorney to confess judgment "in favor of the holder" "at any time" after its execution, with the maker's "consent to immediate execution upon such judgment," is not due at any fixed and determinable period, unless it be treated as due from and after its delivery; and, therefore, such note is not negotiable. (*Post, pp.* 624-628.)

Acts cited and construed: Acts 1899, ch. 94, sec. 4.

Cases cited and approved: Stults v. Silva, 119 Mass., 137; Mahoney v. Fitzpatrick, 133 Mass., 151; Richards v. Barlow, 140 Mass., 218; Adam v. Arnold, 86 Ill., 185; Bank v. McGeoch, 73 Wis., 332; Kimball Co. v. Mellon, 80 Wis., 133.

4. **SAME. Same. Same. Power of attorney to confess judgment "at any time hereafter" means after the delivery of the note.**

Where the power of attorney annexed to a promissory note authorizes the confession of judgment thereon, in favor of the holder, "at any time hereafter," these quoted words fix the time for the confession of judgment at any time after the date, execution, and delivery of the note. (*Post, pp.* 624-628.)

See citations under the preceding headnote.

5. **SAME. Same. Same. Same. Provision for confession of judgment at maturity does not affect negotiability, but prior to maturity destroys negotiability.**

The statutory provision contained in the negotiable instruments law (Acts 1899, ch. 94, sec. 5, par. 2) that the negotiable character of an instrument is not affected by a power of attorney authorizing a confession of judgment, if the instrument is not paid at maturity, undoubtedly indicates that it was not the

Bank v. Russell.

intention of said statute to make negotiable an instrument containing a power of attorney for the confession of judgment prior to maturity, especially where such time is not determinable, but depends upon the whims or caprice of the holder so as to be absolutely uncertain. (*Post, pp.* 627, 628.)

Acts cited and construed: Acts 1899, ch. 94, sec. 5, par. 2.

Cases cited and approved: Wisconsin Yearly Meeting v. Babler, 115 Wis., 289. See, also, citations under the third headnote.

6. **SAME. Same. Same. Same. Same. Purchaser from payee of note authorizing confession of judgment, at any time after its delivery and before maturity, takes it subject to defenses.**

A promissory note which contains a warrant or power of attorney authorizing the confession of judgment thereon in favor of the holder at any time after its date, execution, and delivery, and authorizes the issuance of execution on such judgment, is thus made enforceable upon its execution and delivery, and a transferee of the payee is a holder after maturity; and, therefore, he takes the note subject to defenses existing against the payee and transferrer. (*Post, pp.* 624, 625, 626.)

7. **SAME. Same. Same. Same. Same. Same. Peremptory instructions to jury to find that such purchaser took the note free from defenses is erroneous.**

Where one of the issues submitted to the jury in chancery in the suit of the purchaser against the maker of a note authorizing the confession of judgment at any time after its date, execution, and delivery, was this: "Is the complainant an innocent purchaser in due course of trade for value of said indebtedness without notice of any offset due the defendant on the same?" the chancellor, was clearly in error, in directing the jury to answer this issue in the affirmative. (*Post, p.* 628.)

8. **Same. Innocent holder in due course must become such before maturity of negotiable instrument.**

An innocent holder in due course of trade must become such before maturity of the instrument, which itself must be negotiable. (*Post, p.* 628.)

Bank v. Russell.

9. **SUPREME COURT PRACTICE.** Errors not raised below nor on appeal may be noticed by supreme court of its own motion, when.

When necessary to meet the ends of justice, the supreme court has the right, of its own motion, to notice, and will notice, errors of the lower court, though not raised below nor on appeal, and, when the error is very plain, will, of its own motion, correct it; and, therefore, the court may reverse a judgment against the maker of a note in favor of an indorsee, upon the grounds that the note was not negotiable, and was overdue, when taken by the complainant, so as to let in the maker's defenses against the payee, though the point was not raised below, nor by appellant's counsel upon the argument. (*Post, pp.* 628, 629.)

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— FRANCIS FENTRESS, JR., Chancellor.

MCKELLAR & KYSER, for complainant.

T. R. BOYLE and J. F. BICKERS, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

Lon Russell purchased from James Dorsey, in Elgin, Ill., 54 head of dairy cattle to be brought to Memphis where Russell had been engaged in the dairy business for several years.

The consideration was $2,000 cash, and two notes for $772.50, each dated February 15, 1910, and payable in four and eight months, respectively. These notes were secured by a chattel mortgage which Russell executed in Dorsey's favor, covering the cattle purchased and also

certain other cattle belonging to Russell on his place near Memphis. These cattle bought from Dorsey were shipped to Memphis shortly thereafter, and, upon their arrival, were subjected to an examination and tested by a veterinary surgeon, under the order of the Memphis board of health. As a result of this test, eighteen of the cows purchased were found to be infected with tuberculosis. They were condemned and branded by the inspector and Russell was ordered to dispose of them, by virtue of certain health ordinances of the city of Memphis.

Russell imemdiately notified Dorsey of the condition of the cattle, and some correspondence was had between them, Dorsey directing that the diseased cattle be sold or disposed of to the best advantage, the proceeds to be used in partial liquidation of the two notes mentioned above.

As late as April 21, 1910, Dorsey executed and sent down to Russell a paper writing, authorizing the aforesaid disposal of the infected cattle, and indicating that he (Dorsey) was still the owner of the purchase-money notes.

On June 21, 1910, the First National Bank, of Elgin, Ill., filed a bill in this case to obtain a decree for the amount of the two notes against Russell, and also to enforce the chattel mortgage by which said notes were secured. The bill alleged that the bank was a *bona fide* holder of said notes in due course of trade, without notice of any infirmity, having acquired them from Dorsey on February 28, 1910, by purchase and for value.

This bill was answered by Russell, in which he denied that the bank was an innocent holder in due course of trade, and this is in reality the only question for our consideration here.

The testimony of certain officers and employees of the bank was taken, from which it appeared that these notes were brought from Dorsey on February 28, 1910, at their face value, the only profit for the bank in the transaction being the 6 per cent. interest which the notes bore from date. The books of the bank corroborated the above testimony. It also appeared from proof offered by the bank that when payment of the notes was refused by Russell, they were duly protested by a bank in Memphis to which they were sent for collection and Dorsey's liability as an indorser thus fixed. The proof was that Dorsey was solvent and good and lived in the immediate neighborhood of Elgin, Ill., where this bank was located.

So that, we have here a case in which an Illinois bank ignores and overlooks a solvent indorser in its own town and forwards these notes for collection to a distant State, there to be sued on, and an effort made to realize their proceeds out of the maker. We also notice that, while the bank claimed to be an innocent purchaser, there was no profit in the transaction for it, except the bare 6 per cent. interest which the notes drew. There appears the further circumstance that several weeks after the bank claims this transfer was made to it, Dorsey indicated that he was still the owner of the notes, in his correspondence with Russell.

While we cannot understand all these circumstances nor why the bank should sue on these notes in Tennessee, with a solvent indorser at home—if there was no collusion between it and Dorsey—while these circumstances are suspicious, still they are not enough, either alone or taken together, to discredit the bank's claim of being an innocent holder of these notes for value.

The "negotiable instruments act" provides (Acts of 1899, c. 94, sec. 56) : "To constitute notice of infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

There is no proof of actual knowledge of any infirmity or defect on the part of the bank in this particular case, and, under the provisions of this statute, we find no sufficient facts in this record within the bank's knowledge from which we can impute to it bad faith.

The first of the notes sued on is in words and figures as follows:

"$772.50     Elgin, Illinois, Feby. 15th, 1910.

"On June 15, 1910, after date, for value received, I promise to pay to the order of James Dorsey, seven hundred seventy-two ˙and 50-100 ($772.50) dollars, at the State National Bank, Memphis, Tennessee, with interest at 6 per cent. per annum, after this date until paid. And to secure the payment of said amount, I hereby authorize irrevocably any attorney, of any

Bank v. Russell.

court of record, to appear for me in such court, in term time or vacation, at any time hereafter, and confess a judgment without process, in favor of the holder of this note, for such amount as may appear to be unpaid thereon, together with costs and ten dollars attorney's fees, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgment, hereby ratifying and confirming all that my said attorney may do by· virtue hereof.

LON RUSSELL."

The second one of these notes is identical with the first in words and figures, except that it is payable on October 15, 1910.

The question that arises upon consideration of these notes is as to the effect of this provision contained in them, authorizing a confession of judgment "in favor of the holder" "at any time thereafter," and the "consent to immediate execution upon such judgment" therein contained.

In order to render any instrument negotiable under the law merchant and under the act, it must be payable at a determinable future time. That is, at a fixed period after date or sight; on or before a fixed or determinable future time expressed therein; or on or at a fixed period after the occurrence of a specified event which is certain to happen, though the time of happening be uncertain. These notes, while they purport to be due and payable on fixed dates after the date of execution, to wit, June 15,

124 Tenn.—40

1910, and October 15, 1910, still, by reason of the warrant of attorney given to the holder to confess judgment upon them and issue execution thereon, *at any time hereafter,* are really due and payable from their execution. Collection and payment of the notes could have been enforced on the first day, the second day, or any other day after they were executed and delivered to Dorsey, under their express terms. They were dated on February 15th and transferred to the bank, according to its books, on February 28, and to all intents and purposes, by the very language of the notes themselves, they were due in Dorsey's hands before he transferred them to the bank.

A note upon which judgment can be obtained, and execution immediately issued thereupon at any time after its execution, is not due at a fixed and determinable period at all, unless it be treated as due from and after delivery.

The view that we have taken of this provision of the note in question is sustained by high authority. The supreme court of Massachusetts construed a note identical in its terms with those in suit here, and that court, speaking through Judge Holmes, now of the United States supreme court, said:

"It has been decided in Massachusetts that a note payable at a future day certain, or earlier at the option of the holder, is not negotiable. *Mahoney* v. *Fitzpatrick,* 133 Mass., 151 [43 Am. Rep. 502]; *Stults* v. *Silva,* 119 Mass., 137. The obligation to be gathered from the four

Bank v. Russell.

corners of the present instrument is similar. The promise taken by itself is absolute to pay in ninety days from date, but the power of attorney on the face of the note authorizes a confession of judgment at any time thereafter, and we must construe these words as meaning at any time after the date. See *Adam* v. *Arnold,* 86 Ill., 185. We cannot distinguish such a case from *Mahoney* v. *Fitzpatrick.* For this reason, without considering whether there are any others, we must decide that the note was not negotiable." *Richards* v. *Barlow,* 140 Mass., 218, 6 N. E. 68.

Construing a note with a similar provision, the supreme court of Wisconsin said:

"It is quite certain that the note was not negotiable, because, by the power of attorney which it contained, judgment could be entered upon it at any time after its date, whether due or not. Thus the time of payment depends upon the whims or caprice of the holder and is absolutely uncertain. This deprives the note of being negotiable. *Continental National Bank* v. *McGeoch,* 73 Wis., 332 [41 N. W. 409]; *Kimball Co.* v. *Mellon,* 80 Wis., 133 [48 N. W. 1100]. Chapter 356, Laws of 1889 (the negotiable instrument law), provides that the negotiable character of an instrument is not affected by a provision authorizng a confession of judgment, if the instrument is not paid *at maturity.* Upon familiar principles of statutory construction, this provision makes a note like the present nonnegotiable." Wisconsin Yearly Meeting v. Babler, 115 Wis. 289, 91 N. W. 678.

The provision of the "negotiable instruments law," to which the Wisconsin court calls attention as observed by that court, undoubtedly indicates that it was not the intention of the act to make negotiable an instrument containing stipulations for the confession of judgment prior to maturity.

This case was tried before a jury upon certain issues made up and submitted to them according to our practice. The third issue submitted to the jury was this:

"Is the complainant an innocent purchaser in due course of trade for value of said indebtedness without notice of any offset due the defendant on the same?"

His honor, the chancellor, directed the jury to answer this issue in the affirmative. In view of what we have said, his honor was clearly in error in this particular.

In order for the bank to be treated as an innocent holder in due course of trade, it must appear that it became the holder of this note before it was due, and the note itself must, of course, be a negotiable instrument.

It is urged, however, for the bank, that this question was not raised below or by defendant's counsel in this court, and that it should not, under the rules, be considered by us in determining this case. It is well settled, however, under our practice, that when necessary to meet the ends of justice, this court has the right to notice, and will notice, errors of the lower court, and, when the error is very plain, will correct it of its own motion.

Being of opinion that these were not negotiable notes, and that if they were, the bank took them when past due,

it follows that the notes came into the bank's hands subject to all defenses that would have existed against them had they remained in the possession of Dorsey and been sued upon by him.

The decree of the chancellor, therefore, will be reversed, and the case remanded to that court for a new trial, applying the principles here laid down.

The bank will pay the costs of this court.

Other questions made in the brief of counsel for the bank have been considered and disposed of orally.