CLARK, Appellant, vs. HORICON STATE BANK, imp., Respondent.

*February 11—March 9, 1920.*

*Bills and notes: Note authorizing confession of judgment at any time: Negotiability: Defenses available against transferee: Vendor and purchaser: Agreement of vendor to improve land: Breach: Evidence: Parol proof of consideration of deeds and notes.*

1. A promissory note authorizing any attorney to appear for the maker "at any time hereafter, and confess a judgment, without process, in favor of the holder of this note, for such an amount as may be due, and also for any amount to become due thereon," is nonnegotiable, notwithstanding secs. 1675—2 and 1675—5, Stats., the words "at any time hereafter" having reference to the delivery and not to the maturity of the note, and the note is therefore not payable at a fixed or determinable future time within the meaning of sec. 1675—1. *Wisconsin Yearly Meeting v. Babler,* 115 Wis. 289, followed; *Thorp v. Mindeman,* 123 Wis. 149, distinguished.

2. The transferee of a nonnegotiable note takes the note subject to any defenses that might have been properly interposed by the maker if sued by the original payee.

3. Promises by the vendor of land as to plowing and planting it and the construction of a railroad and warehouse thereon, though not sufficient to constitute the basis of an action for fraudulent representations, are nevertheless valid agreements, for a breach of which damages may be recovered.

4. Deeds and mortgages are not such bilateral contracts as foreclose the right of either party to show that the consideration and conditions for and of the contractual relationship between the parties is other than that, or even additional to that, expressed in the deeds or mortgages.

VINJE, J., dissents.

APPEAL from an order of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Personal service was made in this action upon the defendant *Horicon State Bank,* which alone appeared and demurred to the complaint.   The individual defendants named were served by publication only and no appearance has been made in their behalf.

The complaint in effect seeks to cancel and set aside certain land contracts, deeds, and notes growing out of the purchase by plaintiff of certain lands in what is known as the Horicon marsh, and for the return of $500 paid by plaintiff to the individual defendants.

As against the *Horicon State Bank* it is alleged that it acquired two certain notes for $500 each, executed by the plaintiff to the defendant Oliver as part consideration of such purchase and by the latter disposed of to the defendant bank; that such bank is not an innocent holder thereof for the reason that the said notes are not negotiable instruments and are held by the said bank, therefore, subject to any rights that the plaintiff may be adjudged to have as against the defendant Oliver.

The complaint, which is extraordinarily voluminous, alleges in substance that in June, 1915, after having received information to the effect that the individual defendants prior thereto claimed to be associated together in buying and selling real estate in what is known as the Horicon marsh in Dodge county and were representing to own and control some 13,000 acres, and that such lands were fertile and highly adapted to the raising of onions and other garden products, the plaintiff visited the lands and thereupon purchased ten acres for the sum of $1,500, by $500 being paid in cash and the giving of two notes for $500 each, one due January 1, 1917, and another due the following year, to each of which was attached a form of warrant of attorney to enter and confess judgment upon the same; that such transaction was pursuant to a written contract with the defendant Tallmadge.

That in the following September the plaintiff visited the

lands so conveyed to him and found that the crops growing upon those and the surrounding lands were poor and not in a marketable condition, and that at the same time he learned that the defendant Tallmadge had left the country and that his whereabouts were then unknown.

That in February, 1916, the defendants Oliver and Borchers called on plaintiff and represented, among other things, that the defendant Oliver had acquired the interest of the defendant Tallmadge in the lands on the Horicon marsh; that said Oliver would exchange the lands which plaintiff had contracted to buy from Tallmadge in June for another and more desirable tract on the same marsh for the same price of $1,500; that he would give credit on the same for the $500 cash paid by plaintiff to Tallmadge, and would give up the promissory notes of June and take in exchange two new notes, dating the same back to June 24, 1915, to be secured by a real-estate mortgage upon the lands which he was to convey.

That said Oliver would plow and prepare the said ten acres of land for seeding and seed the same the coming spring, and care for the crops during the season and harvest them.

That said Oliver would build a railroad to said marsh near these lands and also build a warehouse at the railroad station convenient to the lands and have it ready for use in the year 1916 for storing a large amount of onions, and furnish crates for the same, and have all in readiness in 1916 to properly market such crops.

That if from 750 to 1,000 bushels of onions could not be raised on said lands, the defendant Oliver would not charge the plaintiff a cent for the said lands.

That the defendants Oliver and Borchers had issued a pamphlet prior to June, 1915, edited by the defendant Oliver, of some sixty-four pages, entitled "Onions and Independence," containing highly laudatory descriptions of the defendant Oliver as a judge of lands and a successful

onion grower in the state of Indiana, and an alluring picture of what could be done in the raising of onions upon the Horicon marsh; containing calculations showing that on a conservative basis there would be a net annual profit of $720 per acre from the ten acres, or at least an annual average return of three to five times the whole cost of the farm. Also a pen-picture of the warehouse that was to be built for the convenience of the purchasers of this land, the interest he would acquire therein, and the benefits therefrom and the possibilities arising from such a situation, and many other details.

That, relying upon the promises and representations, the plaintiff did take in exchange for the property purchased in 1915 ten certain other acres, and executed the notes hereinafter set forth.

That the individual defendants have absconded from the state of Wisconsin and disposed of their interest, if any they had, to the said lands in the Horicon marsh; that there has been a failure on the part of the defendants to keep their promises and agreements, in that, among other things, they failed to build the railroad; to build and erect a warehouse; to plow and prepare the land for seeding, and to care for the crops.

That the land was not fertile or adapted to the raising of onions and not capable of producing the quantity per acre as claimed.

That no village site has ever been laid out at or near these lands and that the defendants never intended that such should be done, and that all of the promises, statements, and agreements made by defendants to the plaintiff were falsely and corruptly made for the sole purpose of inducing the plaintiff to purchase the lands, pay the $500, and to make and deliver the promissory notes, land contracts, and mortgages.

That if the plaintiff had known, at the time he contracted to purchase and did purchase from the defendant Edward

Oliver, that the promises, agreements, and statements so made to plaintiff, including those in the pamphlet aforesaid, were not true, he would not have purchased the said lands.

To this complaint the defendant bank demurred upon the following grounds:

(1) That it appears upon the face of the complaint that it does not state facts sufficient to constitute a cause of action.

(2) That it appears upon the face of the complaint that it does not state facts sufficient to constitute a cause of action against the *Horicon State Bank.*

The trial court sustained the demurrer, with leave to the plaintiff to amend. From such order the plaintiff appealed.

By stipulation between the parties a copy of the judgment notes held by the defendant bank and received by it from the defendant Oliver was made a part of the record as though set forth in the pleadings. The two notes in question were alike, except that the second was payable one year after the first. The first is as follows:

"$500            .          Horicon, Wis., June 24, 1915.

"On or before Jan. 1st, 1917, after date, for value received, we, jointly and severally, promise to pay to the order of Edward Oliver five hundred dollars, at the *Horicon State Bank* at Horicon, Wis., with interest at the rate of six per cent. per annum after date until paid.

"And to secure the payment of said amount, I hereby authorize, irrevocably, any attorney of any court of record to appear for me in such court, in term time or vacation, at any time hereafter, and confess a judgment, without process, in favor of the holder of this note, for such an amount as may be due, and also for any amount to become due thereon, together with costs, and ten dollars attorney's fees, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgment, hereby ratifying and confirming all that my said attorney may do by virtue hereof.

"DAVID B. CLARK."

For the appellant there was a brief by *F. F. Wheeler,* attorney, and *E. R. Hicks,* of counsel, both of Oshkosh, and oral argument by *Mr. Hicks.*

For the respondent the cause was submitted on the brief of *Thompson, Thompson & Gruenewald* of Oshkosh.

ESCHWEILER, J.    Under sec. 1675—1, Stats., an instrument to be negotiable must be for a sum certain and be payable on demand or at a fixed or determinable future time. Under sec. 1675—2 the sum payable is a sum certain, although it is to be paid by instalments with a provision that upon default in payment of any instalment or of interest the whole shall become due, or although it is to be paid with costs of collection or an attorney fee in case payment shall not be made at maturity.

By sec. 1675—5 the negotiable character of an instrument otherwise negotiable is not affected by a provision which authorizes a confession of judgment if the instrument be not paid at maturity.

The notes in question here authorize any attorney of a court of record to appear for the plaintiff "in term time or vacation, *at any time hereafter,* and confess a judgment, without process, in favor of the holder of this note, *for such an amount as may be due, and also for any amount to become due thereon.*"

We think the reasonable construction under these statutes to be given to this language thus quoted and all of it, omitting no part thereof unless there be cogent reason for so doing, and none so appears here, necessarily implies that the holder of such note is authorized, at any moment after its execution and delivery, to cause judgment to be entered against the maker for any amount still unpaid at such time on the note.    We are not justified in construing the clause "at any time hereafter" to mean merely at any time after maturity, nor can we reject as surplusage the phrase "for any amount to become due thereon."    The first phrase

speaks as of the time of the execution of the instrument and not as of its maturity. The last phrase relates to a sum not exceeding the face of the note which is not yet due by the terms of the note itself, but is according to its terms to become due thereafter. The right so given to the holder of the note to so enter judgment at any moment after receiving such note is absolutely within his control and beyond the power of the maker to prevent, and therefore it is not payable at a fixed or determinable future time within the meaning of sec. 1675—1, *supra*. The power of attorney involved here therefore renders such note nonnegotiable, and it is squarely within the decision of this court to the same effect in the case of *Wisconsin Yearly Meeting v. Babler,* 115 Wis. 289, 91 N. W. 678. In that case, as appears from the printed case, the portion of the note authorizing an appearance on behalf of the maker read as follows: "in term time or vacation, *at any time hereafter,* and confess a judgment without process in favor of the holder of this note for such amount as may appear to be unpaid thereon, *whether due or not."* That case was decided after the adoption of the negotiable instrument law as it now appears, and it expressly passed upon sec. 1675—5, above quoted.

A similar conclusion was reached in *Richards v. Barlow,* 140 Mass. 218, 6 N. E. 68, and *First Nat. Bank v. Russell,* 124 Tenn. 618, 139 S. W. 734.

There is nothing in the case of *Thorp v. Mindeman,* 123 Wis. 149, 159, 101 N. W. 417, which conflicts with this ruling, inasmuch as in that case the provision in a real-estate mortgage that on default in case of failure to comply with any of the conditions of the mortgage the whole principal amount should, at the option of the mortgagee, become due and payable, was held not to affect its negotiability, for the reason that such contingency or condition was within the power of the maker to control, which is not the situation in the case at bar.

The note, therefore, being nonnegotiable, the *Horicon*

*State Bank* took the same subject to any defenses that the plaintiff might have properly interposed against it if sued by the original payee therein, and its demurrer on that ground was improperly sustained.

Were the only question on the complaint as against the individual defendants one as to whether or not it shows sufficient facts upon its face to sustain an action for the cancellation of the instruments in question on the ground of false representations, we fear we should have great difficulty in sustaining it, for the reasons, among others, that the complaint shows that the plaintiff had and exercised the power of examining the lands sold, and that after having made the first purchase in June, 1915, and after the second opportunity to examine the land in question, he made his second purchase, and that the representations upon which he alleges he relied were substantially all as to future rather than as to past or present events. But we do not at this stage of the litigation deem it necessary to finally dispose of that question.

There are allegations in the complaint as to material promises and undertakings made by the individual defendants as to the plowing and planting of the land, harvesting its crops, building a railroad into the property and a warehouse on the same, and possibly others, and of default in so doing.

While such promises might not be sufficient to come within the principles upon which relief may be had in an action for fraudulent representations in the making of a contract, they are nevertheless valid agreements on the part of the individual defendants, or some of them, to do certain things as part consideration for the obligations assumed by plaintiff. For breach of such executory agreements and consequent damages the plaintiff might recover damages.

It appearing, therefore, that the complaint in question does state some cause of action as against the individual defendants, and the defendant *Horicon State Bank* having

taken the notes subject to any deductions therefrom that might properly be made on account of damages that may be found due, if any, from the individual defendants arising out of this transaction, the other ground of the demurrer interposed by the defendant bank was also not well taken.

From the complaint it appears that in the first transaction in June, 1915, a contract was signed by plaintiff and Tallmadge concerning the transaction there involved, providing for the giving of the deed on one side, the notes and mortgages on the other, and a recital that no representations whatsoever had been made as to the nature or character of the land or the soil and its adaptability for agricultural purposes, and that the plaintiff had made his own investigation with reference to all of such matters.

At the time of the second transaction in February, 1916, with defendant Oliver, no such written contract seems to have been made, and the writings comprise the deed on one side, the mortgage and notes on the other.

It is contended that the agreements or promises alleged to have been made by the defendants Tallmadge and Oliver, respectively, at the time of the two contracts, had been merged in the writings and could not be relied upon by plaintiff. It is not necessary to consider at this time what effect if any the first contract between the plaintiff and Tallmadge might have with reference to that situation. The allegations as to the later transaction with the defendant Oliver show the making of no such separate bilateral written contract as in the first instance. The writings in this second transaction are only the deed, the mortgage, and the notes. Deeds and mortgages are not such bilateral contracts as foreclose the right of either party to show that the consideration and conditions for and of the contractual relationship between the parties is other than that expressed in the deed or mortgage, or that it is even additional to that mentioned in such instruments. *Cuddy v. Foreman,* 107

Wis. 519, 83 N. W. 1103; *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681; *Jost v. Wolf,* 130 Wis. 37, 42, 110 N. W. 232; *Illinois S. Co. v. Paczocha,* 139 Wis. 23, 31, 119 N. W. 550; *Borchert v. Skidmore L. Co.* 168 Wis. 523, 526, 171 N. W. 70. The allegations in the complaint as to the other promises than those expressed in the writings and made by defendants as a part of the consideration to the plaintiff for his entering into the transaction with them respectively, could be properly supported by appropriate oral testimony and form the basis of an action for damages.

*By the Court.*—Order reversed, and cause remanded for further proceedings.

Vinje, J. (*dissenting*). In my opinion the notes in question were negotiable. The power given to confess judgment "at any time hereafter" "for such an amount as may be due, and also for any amount to become due thereon," does not authorize the confession of a judgment until there is something due on the note. When there is, then judgment may be taken for such amount, and also for any amount to become due thereon, but judgment cannot be taken for any amount to become due thereon until there is something due. The note says for such amount as may be due, *and* also, not *or* also, for any amount to become due thereon. Since judgment cannot be taken until a sum becomes due, and since that time is fixed by the note, it is negotiable.

The cases relied upon by the court differ radically in their facts. In *Wisconsin Yearly Meeting v. Babler,* 115 Wis. 289, 91 N. W. 678, judgment could be confessed "at any time hereafter" for such amount as may be *unpaid* thereon, *whether due or not.*" In *First Nat. Bank v. Russell,* 124 Tenn. 618, 139 S. W. 734, and in *Richards v. Barlow,* 140 Mass. 218, 6 N. E. 68, judgment could be confessed "at any time hereafter" "for such amount as may appear to be *unpaid* thereon." It hardly seems necessary to point out the

difference between an amount "unpaid" and an amount "due," especially where, as in *Wisconsin Yearly Meeting v. Babler,* 115 Wis. 289, 91 N. W. 678, the word "unpaid" is sought to be reinforced by the words *whether due or not,* though the latter neither add to nor detract from the meaning of the word "unpaid," which means not paid, whether due or not.